# George v. Mobile & Ohio Railroad Co.

*Action by Employé against Employer; for Damages on account of Personal Injuries.*

1. *When plea to original complaint applies to complaint as amended.* —Where the defendant pleaded the general issue to the several counts of a complaint as originally filed, and, after said counts were amended, filed additional pleas, expressly disclaiming the withdrawal or waiver of the pleas on file,—the original pleas continuing throughout on the files of the cause,—and the plaintiff took issue "on all pleas on file,"—there is no merit in a contention of the plaintiff, on appeal, that the general issue was not pleaded to the counts as amended.

2. *Error without injury in sustaining demurrers to counts of complaint, where other counts are left.*—Where demurrers were sustained to some of the counts in a complaint drawn under the Employer's Liability Act, but the plaintiff had the opportunity to present all his evidence under counts to which demurrers were not sustained, and did thereunder fully develop his whole case, and the averments of these counts did not impose on him the burden of proving any fact not essential to his recovery, he could not have been injured by the action of the court in ruling out, on the demurrers, the other counts, whether they were good or bad.

3. *Error without injury in rulings on pleadings.*—Where a special defense which was properly pleaded was proved by uncontradicted evidence, rulings of the trial court in overruling plaintiff's demurrers

to pleas setting up other special defenses could not have involved injury to the plaintiff, and need not be reviewed on appeal by him.

4. *Contributory negligence of employé; not excused by custom* —Where an employé, in discharging the duty required of him, has the choice of two ways of performing it,—one entirely safe, the other obviously and greatly dangerous,—adopts the dangerous way, and is injured, he is guilty of negligence which will bar a recovery by him in an action against the employer, based on the latter's negligence; and he cannot relieve himself of the consequences of such contributory negligence by showing that it was customary to perform the duty in the dangerous way.

5. *Same; obeying orders of superior.*—A switchman who was injured while attempting, as he walked in front of an ordinary road locomotive, having a pilot, while in motion, to uncouple a car from the locomotive,—such act being shown to be very dangerous,—when the engineer was subject to his orders and signals, and he had the right to have the engine stopped while uncoupling the car, was guilty of contributory negligence, though expressly ordered to perform the service in that way by a superior to all whose reasonable and proper orders he was bound to conform; and the supposed exigencies of the employer's business, requiring that the work of switching should be done in that way, because more expeditious, would not excuse such contributory negligence.

6. *Departure in pleading.*—Where a complaint counts on negligence alone, replications setting up wantonness, willfulness, and recklessness on the part of the defendant, are departures from the case made by the complaint, and are subject to demurrer on that ground.

7. *General affirmative charge; when propriety of, not affected by erroneous rulings on pleadings.*—Where the trial court erroneously overruled defendant's demurrers to the plaintiff's replications to special pleas, but subsequently gave the general affirmative charge in favor of the defendant, the defendant's right to such charge is to be determined, on appeal by the plaintiff, without reference to the issue made by the bad replications.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JAMES T. JONES.

Reference is made to the report of this case on the former appeal for a statement of the pleadings as they stood at that time.—94 Ala. 199.

The opinion indicates the amendments made, after the reversal and remandment on the former appeal, to the 19th, 21st, 23d, 26th and 27th counts of the complaint. The new count which was added was as follows :

(28) The plaintiff claims of the defendant the further

sum of seventy-five thousand dollars ($75,000) for that on, to-wit, the 3d day of February, 1889, defendant was a railroad corporation using and operating a railroad in the State of Alabama, and, as a part of its business, caused cars to be taken in and out of its yard in the said State, and to be moved from place to place in said yards by means of a locomotive or steam engine called a 'yard engine' ; and defendant employed switchmen, whose duties were to go between the cars, and couple or uncouple them, when it was necessary to move them as aforesaid, and to couple and uncouple defendant's engines from the cars for a like purpose ; and it became and was proper, in order to enable said switchmen to do said work with safety, that they should have furnished them, for use therein, an engine with a platform or other device, to be used in coupling and uncoupling the engine to and from the cars, or, in the absence of an engine with a platform or other device as aforesaid, that they should have a flat-car to be used in such work. And on, to-wit, the 3d day of February, 1889, plaintiff was, and had for sometime been, in the employment of the defendant as one of its switchmen, and, as such, it became and was his duty to couple and uncouple its said engine to and from its cars in its said yard. The engine furnished by defendant for said purpose had no platform or other device as aforesaid, and a flat-car was obtained and used in so coupling and uncoupling said cars. And on, to-wit, the 2d day of February, 1889, one Arthur Clarke, a person in the service and employment of the defendant as its yard-master, and who had entrusted to him, by the defendant, the superintendence of the work in defendent's yard, including the moving of cars, and the coupling and uncoupling thereof to and from defendent's engine, did, while in the exercise of such superindence, negligently cause said flat-car to be removed and sent out of defendant's yard, and left plaintiff and defendant's other switchmen to couple and uncouple said engine, without the use of a flat-car, to and from defendant's cars ; and on, to-wit, said 3d day of February,1889, the plaintiff, by reason of said negligent removal of said flat-car, under the orders of said Arthur Clarke, and in the performance of his said duties as one of defendant's switchmen, walked between said engine and one of said cars, and by reason of said negligent removal of said

flat-car by said Clarke (and while plaintiff was in the performance of his duty as aforesaid, between said engine and car) said engine ran over and injured the plaintiff, wherefore he sues."

There were verdict and judgment for the defendant, and the plaintiff appeals. Other material facts are sufficiently stated in the opinion.

GREGORY, L. & H. T. SMITH, for appellant.

E. L. RUSSELL and R. P. DESHON, *contra.*

Elaborate written arguments were filed by the counsel for the appellant and the appellee, respectively, in which the questions involved in the numerous assignments of error were discussed, and many authorities cited. Their length forbids the insertion here of adequate summaries of them.

McCLELLAN, J.—This is an action prosecuted by George to recover damages from the Railroad Company for personal injuries sustained by plaintiff by being run over by an engine of defendant. The complaint originally contained twenty-seven counts. On a former trial, demurrers were sustained to all of the counts except the 19th, 21st, 23rd, 24th, 26th and 27th, and overruled as to these. The 24th count was afterwards withdrawn. Judgment went for plaintiff on that trial, and on appeal to this court the judgment was reversed.—94 Ala. 199. The action of the lower court in overruling demurrers to the 19th, 21st, 23rd and 27th counts was sustained; but the 26th count was held to be bad, and the overruling of the demurrer to it erroneous. For this, among other erroneous rulings of the trial court, the reversal was had. The cause coming on again in the Circuit Court, this 26th count was amended so as to obviate the infirmity adjudged by the court. The 19th, 21st, 23rd, and 27th counts were also amended, and a new count was added, numbered 28. The amendment to the 19th count consisted in striking out the word "brakeman," and inserting "switchman" instead, and by stating the name of the switchman to whose orders plaintiff was subject at the time of the casualty. The amendments to the 21st and 23rd counts were of much the same character, merely making it appear that the plaintiff was a

switchman, instead of a brakeman, as had been first alleged, and giving the name of the yard-master referred to in the original 21st count, and of the engineer referred to in the original 23rd count. The 26th and the 27th counts were amended to meet the decision and suggestion of this court, so as to aver that the defect in machinery, &c., complained of arose from, or had not been discovered or remedied owing to, the negligence of the defendant, &c. &c.; and, also, by substituting the word "switchman" for "brakeman," in stating the capacity in which plaintiff was employed by the defendant. On the first trial the general issue, with other pleas, was interposed to all these counts. Before the last trial the defendant filed numerous other special pleas to these counts, but expressly without waiving or withdrawing the pleas filed before the amendments to which we have referred, the record recital being: "Comes the defendant, and pleads the following *additional* pleas to the 19th, 21st, 23rd, 26th and 27 counts of the complaint as amended by plaintiff, in no way withdrawing or waiving the pleas on file." And after this, one of said original pleas interposed to the 27th count was amended without objection, and thus treated as having continued to be a plea to that count. Moreover, all these pleas were, and continued throughout, on the files of the cause, and the plaintiff finally, in express terms, took issue "on all the pleas on file to which demurrers have not been sustained." We, therefore, cannot concur in the contention of the appellant that the general issue was not pleaded to the counts named.

There are two hundred and thirty-nine (239) assignments of error on this appeal. Two hundred and twenty-five (225) of these go to the rulings of the trial court on the pleadings, embracing its action in sustaining demurrers to counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 22 and 25 on the first trial, in overruling plaintiff's demurrers to and motions to strike out parts of some of defendant's pleas, in sustaining defendant's demurrers to some of plaintiff's replications, and in refusing to allow plaintiff to amend a replication after a second demurrer thereto had been sustained. One assignment of error is addressed to the ruling of the court upon the admissibility of testimony. Twelve assignments go to parts of the charge given *ex mero motu*

by the court; and the remaining assignment challenges the court's action in giving the general affirmative charge for the defendant at his request in writing.

In respect of the rulings of the court upon demurrers to counts of the complaint, it is demonstrable that no injury to the plaintiff resulted therefrom, whether they were abstractly erroneous or not. Two of these counts are drawn under the common law, and, referring to one of them on the former appeal, this court said: "It being undisputed that the plaintiff was an employé of the defendant, and a fellow servant of the engineer in charge of the engine, which it is alleged negligently ran over him, he is not entitled to recover under the first count, as we have construed it to be a suit by a person not in the employment of the defendant, but lawfully on the track. The liability for injury to an employé, caused by the negligence of a fellow servant, rests on entirely different principles from the liability to a stranger on the track by license or invitation. In the case of an injured employé the case must contain other and distinct averments, whether seeking to enforce the common law or the statutory liability of the employer. The variance between the allegations of the first count and the proof is fatal."—*Mobile & Ohio R. R. Co. v. George*, 94 Ala. 199, 221. As is recognized in this quotation, there could, of course, be a recovery at common law by an employé for injuries suffered through the negligence of the employer himself, as distinguished from that of a co-employé, in a proper case; but on the fully developed facts here, to which may be added the facts averred in these common law counts, not inconsistent with the facts proved, there could be no recovery upon them, especially when the evidence of the plaintiff's contributory negligence, to be discussed further on, is considered. Hence he could not have been prejudiced by any ruling of the trial court as to the sufficiency of these counts.

The remaining twenty-six counts of the complaint are drawn under the Employer's Liability Act.—Code, § 2590. The rulings of the lower court on demurrers struck down nineteen of these, and plaintiff withdrew one, the 24th, leaving six. Of these, the 19th and 21st are drawn under clause 3 of said section of the Code; the 23rd presents a case under clause 5; the 26th and 27th are under the first subdivision of said section, and

count 28 is under the second subdivision thereof. It is
thus seen that the counts remaining in the case, and
upon which the trial was had, presented every possible
category of fact which may be the basis of a recovery
under the statute; and an inspection of them will
demonstrate that no one of them sets forth any fact
which is not essential to recovery. So that, not only
did the plaintiff have the right to fully present all his
evidence under the counts to which demurrers were not
sustained, and, in point of fact, did thereunder fully
develop his whole case, but that the action of the court,
in holding certain of the counts of the complaint insuffi-
cient, did not put upon him the burden of proving any
fact not essential to a recovery. It can, therefore, be of
no manner of consequence whether the eliminated
counts were good or bad. The plaintiff sustained no in-
jury from their absence from the case at the trial.

The general issue was pleaded to all of the counts on
which the case was tried, as we have seen. There were
also numerous special pleas. Demurrers were inter-
posed to many of these, sustained as to some, and over-
ruled as to others. Then plaintiff filed sundry replica-
tions to the special pleas. These were in turn demurred
to, and some were held bad, and others sufficient. All
rulings in these connections against plaintiff are
assigned as erroneous. The complaint thoughout
counted upon negligence simply; no count at any time
before the court charged recklessness, wantonness or
willfulness against the defendant or any of its employés.
One special defense which we find to have been properly
presented to all the counts on which the trial was had
was that the plaintiff negligently contributed to his own
injury; and, if it shall appear that this defense was
proved, the rulings of the court on demurrers to certain
of defendant's pleas could not have involved injury to
the plaintiff, and hence they need not, in that event, be
reviewed.

Plaintiff was a switchman in the yards of the defend-
ant company. He received the injuries of which he
complains while attempting to uncouple, or uncoupling,
a car from the front of an engine. The engine was not
a switch engine, with step or narrow platform in front
for switchmen to stand upon, but was an ordinary road
engine, with a pilot in front and a draw bar four or five

[George v. Mobile & Ohio Railroad Co ]

feet in length attached to the engine at the top of the pilot, and, when not in use for coupling purpose, resting on the pilot with its end at the point thereof.   This pilot is described by the witnesses as a "smooth" one, *i. e.* with no flange around its base, so that switchmen could not stand on it at all in coupling or uncoupling cars to or from it.   When such engine is coupled to a car by means of this bar, the point of the pilot is immediately beneath the drawhead of the car, and its sides extend diagonally beyond the tracks, leaving on either side a small triangular space between the base of the pilot, which is only five or six inches above the roadbed, and the car in front and the rail to the right or left, as the case may be.   It was into this space that the plaintiff went on the occasion of his injuries, to detach a car which was thus coupled to the engine.   The engine was moving at the time "as fast as a man could walk," and it was going forward, pushing the car before it   While plaintiff was in there pulling out the coupling pin, he of course had to keep pace with the car and engine, and in doing this his back was necessarily toward the engine. As he thus moved, and as he was in the act of laying hold of the pin to withdraw it, the base beam of the pilot ran against his foot, caught his heel between it and the roadbed and threw him down, so that the locomotive or some of its front wheels ran over and crushed both his legs.

It was plaintiff's duty to uncouple the car from the engine.   The evidence shows there were three possible ways for him to have performed this duty : one, the mode he adopted and which resulted so disastrously to him, by going in between the engine and car while they were in motion ; another, by standing on the outside of the rail and car, and leaning and reaching over to pull the pin, supporting himself with his other hand against the side of the car, and walking along with the moving train ; and the third, by stopping the car and engine, and then uncoupling them.   There is evidence in the record tending to show that the second method was, under the circumstances, as dangerous as the first.   But all the evidence and common knowledge concur that the third method was absolutely free from peril of any kind, and the evidence, without conflict, shows clearly that the first method, the

one adopted by the plaintiff, involved obvious and great danger to him, danger which is much greater, and manifestly so, than to go in between a car and a regular switch engine, or between two cars while in motion, to uncouple them. The plaintiff himself testified on this subject as follows: "The difference between coupling and uncoupling with a flat car, and with an engine with a pilot, is that with a flat car, you have a place to walk in between to uncouple it, and with a pilot you haven't near so much room as you have with a flat car. It is more dangerous to uncouple from the draw-bar. With a regular yard engine you stand on the step right in front of the engine, and lift up the link and uncouple it, and with the road engine you have to lift the draw-bar; and in uncoupling the yard engine from a car you have a step to stand on to pull the pin; and in uncoupling the road engine you have to go to the front of the pilot to draw the pin. It is more dangerous to go in front of the pilot. It is much more dangerous to uncouple a road engine, with a pilot and bar, from a car than it is to uncouple a regular yard engine from a car. In uncoupling a yard engine from a car you have a platform in front of the engine to stand on, and in uncoupling a road engine you have to go in front of the pilot. * * It is very dangerous to go in while the cars are in motion, to couple or uncouple them. * * The engine and cars were moving along about as fast as a man could walk, and witness went in and pulled the pin. He pulled it the first effort, and he gave no signal for slack." Ellis George, plaintiff's brother, and a witness for him, testified: "There is a great deal of difference attending upon the use of a yard engine and a road engine. The switch engine, you have a step to stand on, and the road engine, you haven't. The road engine is more dangerous. * * * * It was dangerous to couple and uncouple an engine coupled to a car, with a pilot and draw-bar, while in motion. It is very dangerous to uncouple—to switch—with an engine with a draw-bar. It is very dangerous. * * * * It is not as dangerous to uncouple two cars as it is to uncouple an engine and car, with a pilot and draw bar. You can uncouple two cars with comparative risk. * * * It is very dangerous to undertake to uncouple a pilot and draw-bar coupled to another car while in motion."

[George v. Mobile & Ohio Railroad Co.]

W. D. Simms, another of plaintiff's witnesses, testified as follows: "There is a great deal of difference in using a yard engine, or switch engine, and using a road engine. One of them has a pilot and has a draw-bar at the end, and is much more difficult to handle in coupling and uncoupling, and, besides this, a man has to go in between the engine and car with this sort, and the consequence is that if a man happens to stumble, or anything of that sort, he would fall and be run over. Witness had come very near being hurt himself, that is, in coupling. In uncoupling there is a good deal of difference, because a man can't go to uncouple an engine with a pilot very well, unless it stops, without running some risk. The old pilot they used to have, there is no footboard around them at all, and no chance to get on them in any way. There is considerable difference in the danger of the use of the old-fashioned slick-nosed engine, and the switch engine, in coupling. Witness considered that there was a great deal of difference in the danger. Now, if an engine with a pilot is furnished, there was no customary method of using them with anything else, unless they have got to fixing a pilot to the engine to stand on; there was formerly none. That is, there was no way of getting on the engine to make the coupling, or anything of the kind. Sometimes flat cars are used, when you can get them. They are coupled to the engine and shoved ahead of it, and the coupling is made with the other car with a flat car. Using an engine is more dangerous than using a flat car to couple with. A man has some chance of going between the cars. It is dangerous to attempt to uncouple an engine coupled with a draw-bar to a car, because you might fall. Probably some time when you are uncoupling that way, a car would run over you. You might fall, of course. If you fell between two cars, there would not be so much danger. The danger is obvious to go in and uncouple there, and plain to be seen. It is so to attempt to uncouple an engine coupled to another car with a pilot and draw-bar, because there is no chance to get to them. If they are stopped still there is no danger at all." And so Murdock, also a witness for the plaintiff, testified: "They generally used engines with a footboard, mostly at all the places witness ever worked. Witness had used engines with pilots. The footboard engines were the

usual engines used.    There is as much difference in working with the two kinds of engines as there is between day and night.    One you can jump on at the rate of ten miles an hour, and the other ·you can't jump on till it stops.    *    *    *    *    It is very dangerous to go in between an engine with a pilot and draw-bar coupled with another car.    Witness did not know how it was to some people; he didn't mind it.    It is dangerous.    Witness didn't mind it, but there are different kinds of people.    Witness never had getting hurt on his mind, though he had been hurt twice.    It is obviously dangerous to a man who looks on and sees it."    Pat. Markham, another witness for the plaintiff, testified that "there was a big difference in the danger in the use of a road engine, instead of a yard engine, in the yard work; that while it was easy enough to uncouple cars from a road engine,—you didn't have to hold the bar, and all you have to do is to put in the pin—yet if moving along, if you are coupling with the pilot following—if you don't look out it will catch your heel, and you will get yourself cut up."    Pat. O'Donnell, also plaintiff's witness, and, like all the others, an experienced railroad man, testified that it was much more dangerous to go between a road engine and a car to uncouple them while the engine was pushing the car along than between a switch engine and a car for that purpose and under the same circumstances, "because very few road engines have a place to stand on the pilot, to uncouple, while on a switch engine you have got something to stand on, so that the engine cannot come along and catch you.    That it is a great deal easier to attach a flat car to the front of the engine, and couple and uncouple other cars to and from that, than to couple and uncouple to and from a road engine, and safer to uncouple with a flat car in motion;" and, in answer to a question as to leaning over from the outside and uncoupling from a road engine, he said: "Well, the pilot is coming right along after you, close to the ground, and, of course, if you happen to fall, if a persons happen to fall, or slip up, there is no chance to catch himself."    This testimony of these witnesses is not opposed by any other evidence in the case; indeed there is no other on this subject, nor does the record afford ground for any adverse inference.    It shows that the plaintiff did an obviously and greatly dangerous thing

in going in between the pilot and the box car to which
it was coupled, and attempting to walk along in this
small space to draw the pin, release the draw-bar and
then replace the pin, while the pilot was moving upon
his heels as fast as a man could walk. The evidence,
without conflict, further shows that there was no neces-
sity for the plaintiff to have done this. All the witnesses
examined upon the point, and there were several, testify
that, or to facts that show that, the plaintiff had an option
whether he would thus attempt to perform this service, or
would stop the engine and car before going between to
uncouple them. It is clearly shown that in the move-
ments of his engine at the time the engineer was subject
to the orders and signals of the plaintiff, and the latter
had the right and power to require the former to bring
the engine and car to a full stop before going in between
them. Here, then, was presented to the plaintiff the
choice of two ways of performing this duty,—one en-
tirely safe, the other obviously and greatly dangerous.
The law is well settled, and not questioned by appel-
lant's counsel, that upon this state of case the injured
party is guilty of negligence which will bar recovery by
him, if he adopts the dangerous way, or even the
more dangerous way where both are more or less dan-
gerous, in discharging the service required of him.—*Mo-
bile & Birmingham Ry. Co. v. Holborn*, 84 Ala. 137 ; *High-
land Avenue & B. R. Co. v. Walters*, 91 Ala. 435 ; *Louisville
& Nashville R. Co. v. Orr*, Ib. 548; *Mobile & Ohio R. Co.
v. George*, 94 Ala. 199.

But it is insisted that there are other facts in this case
which entitle plaintiff to have the issues submitted to
the jury. For instance, there was evidence tending to
show that it was customary for switchmen to go in be-
tween a road engine and a car, while in motion, to
uncouple them. But this fact, if it were established,
would not have aided the plaintiff. The course pursued
by him being obviously very dangerous, he cannot justify
it, or relieve himself of the consequences of his own neg-
ligence, by showing such custom.—*Warden v. Louisville
& Nashville R. Co.*, 94 Ala. 277 ; *Hill, v. Birmingham
Union R'y Co.*, 100 Ala. 447 ; *Andrews v. Birmingham
Mineral R. R., Co.,* 99 Ala. 438.

Again, it is contended that there was evidence tending
to show that plaintiff was subject to the orders of a fellow

switchman,Mat.Eagan,at the time and place of the injury; that Eagan ordered him to go in between the moving engine and car ; and that on this account his negligence is shorn of capacity to defeat a recovery, or that he was not negligent at all.    In  the  first place, the  complaint does not aver that Eagan ordered the plaintiff  to  go  in between  the  engine  and car *while they were in motion*. But, aside from that, we have no hesitancy  in  declaring that the peril of plaintiff's act  was  so  obvious  and  so great and so imminent that he was under no obligation,on any phase of the evidence, to undertake it, and  that  the doing of it was negligence *per se*, regardless of whether Eagan had directed him to do it in that manner  (which at most is only an inference from a tendency of the evidence) , and also regardless of  a  supposed  necessity to uncouple cars from road engines in this way in  order  to keep up with the work of switching, of  which there  was something said in the testimony of  witnesses.    It  may be true, as was said    in  *Memphis  &  Charleston  R. Co., v. Graham*,  94  Ala.  553, that  "the  act  of  uncoupling  cars  while in  motion  by going  between  them does not necessarily constitute contributory  negligence, under all circumstances ;" but there  can  be no question, we think, that for a switchman to go into the small and irregular space which intervenes between the base beam of  a pilot to an engine, which is pushing a car along as fast  as  a man can walk, and the car to  which  such engine  is  thus  coupled. and  to  undertake  to  walk there while he uncouples the  car  from  the  engine, with  the  pilot  immediately  upon  his  heels, is  negligence on his part, in and of itself, and to be so declared by the court as a matter of  law, though  he  may  have been expressly ordered to do that thing in that particular way by one to all whose reasonable and proper orders he was bound to conform ; and this though  the  negligence of such superior in giving the order  is  counted  on, in  a general way, as it is in this complaint, for  a  recovery. And, upon the  same  principle, the  supposed  exigencies of the railroad's  business  requiring  that  the  work  of switching should be done in this way, because more expeditious, would not justify the doing of this  obviously and  greatly  dangerous  act.—*Kresenowski  v.  No.  Pac. Ry.  Co.*, 18  Fed.  Rep.  299 ; *Western Ry. v. Davis*, 18 So.

17

Rep. 173 ; *Warden v. Louisville & Nashville R. Co.*, 94 Ala. 277, and case there cited.

It is contended further that, conceding the plaintiff was guilty of negligence, his right to recover should have been submitted to the jury, for that there was evidence tending to show that his injury was due to the recklessness, wantonness or willfulness of Lyons, the engineer. It will suffice to say, in this connection, that the replications which set up the wantonness, willfulness and recklessness of the engineer were departures from the case made by the complaint, which counted on negligence alone, as we have seen, and that, of consequence, the court should have sustained defendant's demurrers thereto which proceeded on this ground.—*Louisville & Nashville R. R. Co., v. Markee*, 103 Ala. 160. This error against the defendant cannot be allowed to operate to its prejudice in respect of the propriety of the court's action in giving the affirmative charge in its favor ; but, the bad replications having been demurred to by the defendant, its right to an affirmative instruction is to be determined without reference to the issue made by them. We are not, however, to be understood as holding that there is any evidence in the case tending to show more than simple negligence on the part of the engineer, or on the part of any other employe of the defendant against whom charges of negligence are made in the complaint. That question we do not consider.

It follows that, in our opinion, the circuit court properly charged the jury to return a verdict for the defendant, if they believed the evidence ; and its judgment must be

Affirmed.