McGHEE et al. v. CAMPBELL.

(Circuit Court of Appeals, Fifth Circuit. May 1, 1900.)

No. 762.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE AS DEFENSE.

Contributory negligence is not a defense to a count of a complaint based on acts alleged to have been committed "wantonly, recklessly, and negligently."

2. RAILROADS—ACTION FOR KILLING PERSON ON TRACK—QUESTIONS FOR JURY.

Upon an issue as to wanton and reckless negligence in the running of a railroad train which ran down a hand car in the night, and killed the

plaintiff's intestate, it was not error to refuse to direct a verdict for the defendant, where there was testimony of several witnesses that the train was being run at a speed of 25 or 30 miles an hour, with no headlight burning on the engine.

3. ACTIONS FOR NEGLIGENCE—TRIAL—QUESTIONS FOR JURY.

Negligence and contributory negligence being matters of inference from the facts proved, it is only where the facts are not left in doubt, and are such that the same inferences must be drawn from them by all reasonable men, that the court is justified in taking the question from the jury.

4. MASTER AND SERVANT—ACTION FOR DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE.

In an action brought under the Alabama statute, to recover for the death of a section foreman on a railroad who was killed by a train which struck and derailed the hand car upon which he was riding with his men before daylight on a dark and rainy morning, it was shown that a rule of the company prohibited the running of a hand car after dark without special permission; but the evidence left it in doubt whether the deceased had knowledge of such rule. It was also shown that deceased usually went to work with his men about daylight, and that the evening before he received a telegram from the track superintendent, directing him to take his men in the morning to work at a particular place, to reach which with the hand car required about 1 hour and 20 minutes. Held, that whether such message required the deceased to go upon the track with his hand car at the early hour he did had a material bearing on the question of whether he was guilty of contributory negligence in so doing, and that, as the message itself contained nothing from which the question could be determined as matter of law by construction, it was one to be determined by the jury as an inference of fact from the message and the other facts in evidence.

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Alabama.

Milton Humes and Paul Speake, for plaintiffs in error.
Lawrence Cooper, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. Sallie C. Campbell, as the administratrix of the estate of John W. Campbell, brought this action against Charles M. McGhee and Henry Fink, as receivers of the Memphis & Charleston Railroad Company. The defendants were appointed receivers of the company by the circuit court of the United States for the Northern division of the Northern district of Alabama. The suit is under the employé's liability act to recover damages sustained by the death of the plaintiff's intestate, which was alleged to have been caused by the negligence of the defendants. The act provides that in certain cases, when personal injuries are received by a servant or employé in the service or business of the master or employer, the latter is liable to answer in damages as if he were a stranger. One of the cases in which damages are allowed is when the injury is caused by reason of the negligence of any person in the service or the employ of the master who has charge or control of any locomotive, engine, or train upon a railway. The statute also provides that, when the injury results in the death of the servant, his personal representative can maintain the

action therefor. Code Ala. 1896, §§ 1749, 1751. These statutes are quoted in the footnote.[1]

The complaint is in 11 counts. The third, fifth, ninth, and eleventh counts charge that the defendants, through their servants in charge of the train, "negligently and carelessly" drove and propelled an engine against the intestate, and so killed him, in the darkness of the night, without notice, warning, or the blowing of the whistle, and without a headlight burning on the engine, and while running at a high rate of speed. The other counts charge that Campbell's death was thus caused "wantonly, recklessly, and negligently." The declaration or complaint may in one count aver simple negligence, and in another willful and intentional wrong or wanton and reckless negligence, and proper issues may be made up under pleas to each count. When a count charges simple negligence, a plea of contributory negligence is an answer to it; but when it charges that the act was committed wantonly, recklessly, and negligently contributory negligence does not constitute a defense. The court, therefore, ruled correctly in sustaining the plaintiff's demurrers to the defendants' pleas of contributory

[1] Code Ala. 1896.

"Sec. 1749. Liability of Master or Employer to Servant or Employé for Injuries. When a personal injury is received by a servant or employé in the service or business of the master or employer, the master or employer is liable to answer in damages to such servant or employé, as if he were a stranger, and not engaged in such service or employment, in the cases following:   (1) When the injury is caused by reason of any defect in the condition of the ways, works, machinery, or plant connected with, or used in the business of the master or employer.   (2) When the injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has any superintendence intrusted to him, whilst in the exercise of such superintendence.   (3) When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, to whose orders or directions the servant or employé, at the time of the injury, was bound to conform, and did conform, if such injuries resulted from his having so conformed.   (4) When such injury is caused by reason of the act or omission of any person in the service or employment of the master or employer, done or made in obedience to the rules and regulations or by-laws of the master or employer, or in obedience to particular instructions given by any person delegated with the authority of the master or employer in that behalf.   (5) When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has the charge or control of any signal, points, locomotive, engine, switch, car or train upon a railway, or any part of the track of a railway.   But the master or employer is not liable under this section, if the servant or. employé knew of the defect or negligence causing the injury, and failed in a reasonable time to give information thereof to the master or employer, or to some person superior to himself engaged in the service or employment of the master or employer, unless he was aware that the master or employer, or such superior already knew of such defect or negligence; nor is the master or employer liable under subdivision 1, unless the defect therein mentioned arose from, or had not been discovered or remedied owing to the negligence of the master or employer, or of some person in the service of the master or employer, and intrusted by him with the duty of seeing that the ways, works, machinery, or plant, were in proper condition."

"Sec. 1751. Personal Representative may Sue if Injury Results in Death. If such injury results in the death of the servant or employé, his personal representative is entitled to maintain an action therefor, and the damages recovered are not subject to the payment of debts or liabilities, but shall be distributed according to the statute of distributions."

negligence, so far as they applied to the counts in the declaration which charged that the acts complained of were committed wantonly, recklessly, and negligently. Railroad Co. v. Markee, 103 Ala. 160, 15 South. 511; George v. Railroad Co., 109 Ala. 245, 258, 19 South. 784; Railroad Co. v. Hurt, 101 Ala. 34, 13 South. 130; Beach, Contrib. Neg. (2d Ed.) § 64; 7 Am. & Eng. Enc. Law (2d Ed.) pp. 443, 444, and cases there cited.

John W. Campbell had been section foreman of the railroad company for several years, and at the time he was killed he was section foreman for the defendants as receivers. He was employed at a salary of $40 a month. He lived at Brownsboro, Ala. J. B. Burke was the track supervisor, and lived at Gurley, Ala., which is five and a half miles east of Brownsboro. On the evening before Campbell was killed he received a telegram from Burke, dated December 7, 1896, saying: "Bring your force to second rock cut above Paint Rock bridge, to work in a. m." On December 8, 1896, the next morning after receiving this telegram, Campbell, with four men, started in a hand car from Brownsboro to the rock cut above Paint Rock bridge. They had gone about 250 yards when they were overtaken, at about 40 minutes after 5 o'clock a. m., by the defendants' freight train, consisting of a locomotive and 20 cars. It was dark and raining. The evidence offered for the plaintiff tended to show that the train was running at the rate of about 30 miles an hour, while that for the defendants tended to show that its speed was about 17 miles an hour. Several witnesses for the plaintiff, some of whom were on the hand car at the time of the accident, testified that the engine had no headlight burning; that they were prevented by the noise of the hand car and the noise made by a mill from hearing the train; and that they did not see it until it was within a few feet of them. The engineer and the fireman in charge of the locomotive and other witnesses testified that the headlight was burning and in proper condition. The engineer testified that he saw the men on the hand car ahead of him, and that he did everything he could to stop the train; that he applied the brakes, and opened wide the sand lever. The evidence for the defendants tended to show that it was not possible, after seeing the hand car, to stop the train before the engine struck it. The men on the hand car had no lantern or other light. The engine struck the hand car, and knocked it off the track, and so injured Campbell that he died several hours afterwards.

The case was tried on the plea of not guilty and contributory negligence to the counts in the declaration which charged simple negligence, and on the plea of not guilty to the counts which charged that the act complained of was committed wantonly and recklessly.

It is assigned as error, and insisted on in the oral and printed arguments, that the court refused to give peremptory instructions to find a verdict for the defendants. As has been stated, several witnesses testified that the train was running at night at the rate of 25 or 30 miles an hour, and with no headlight on the engine. The evidence showed that it was dark and raining, and that the train had just passed through the village of Brownsboro. A headlight attached to an engine is a common and necessary means adopted by all railroad compa-

nies for the protection of the lives of those rightfully on the train and on the track. No engine is constructed without a headlight. No trains are run in the nighttime by any railroad company, under ordinary circumstances, without having such a light. This is a matter of common knowledge. If the defendants' servants were running the train at night under the circumstances and at the rate of speed stated by the plaintiff's witnesses, they were unquestionably guilty of negligence. Becke v. Railway Co., 102 Mo. 544, 13 S. W. 1053, 9 L. R. A. 157; Railroad Co. v. Lyon, 62 Ala. 71.

The chief defense relied on, and the ground upon which the court was requested to take the case from the jury, is that Campbell by his negligence contributed to the injury which caused his death. Contributory negligence is nothing more than negligence on the part of the plaintiff. It is governed, therefore, by the rules and law applicable to the negligence of the defendant. The question of negligence is generally, though not always, a question for the jury. Negligence is not a fact which is the subject of direct proof, but it is an inference from facts put in evidence. Witnesses testify to the facts of the case from which negligence, if there is any, is inferred. This inference is usually within the province of the jury. Beach, Contrib. Neg. (2d Ed.) §§ 445, 447; Whart. Neg. (2d Ed.) § 420. When a case involving a charge of negligence is concluded by the presentation of the evidence, there is a preliminary question for the court. The court is to decide whether such evidence has been presented as makes it proper to submit the case to the jury. It is only when the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence becomes one of law for the court. Railway Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186. When evidence is offered which, if true, would constitute negligence, and it is controverted by other material evidence, the case is one for the jury. When there is evidence tending to show negligence, which is not controverted, but from which different inferences could be fairly drawn, the case should be submitted to the jury. The case is for the jury, of course, when the facts are left in doubt, and the inferences to be drawn from them are uncertain, and might fairly lead different minds to different conclusions. Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Railroad Co. v. Van Steinburg, 17 Mich. 99; Kane v. Railway Co., 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339; Jones v. Railroad Co., 128 U. S. 443, 9 Sup. Ct. 118, 32 L. Ed. 478.

The telegram that Burke sent to Campbell is a significant fact in the case. Burke was the track supervisor, and was the superior officer of Campbell, who was the section foreman. Campbell was directed by this telegram to bring his force in the morning to the second rock cut above Paint Rock bridge. The message was received the night before the accident. Campbell was in the habit of going to work with his force about daylight. It would take him about 1 hour and 20 minutes to go on the hand car to the place where he was ordered. The proof shows that the accident occurred about 5:40 a. m., and that he had then gone but a short distance. It may be inferred that Campbell's intention was to reach the rock cut to which he was ordered about the time he usually began work. It may be inferred that the telegram

was a direction that he should do so. We do not say that this is a necessary inference. The telegram, however, was admissible evidence, and tends, with the other facts, to make the question as to contributory negligence proper for the consideration of the jury.

In the case of Railroad Co. v. Amato, 144 U. S. 465, 12 Sup. Ct. 740, 36 L. Ed. 596, the main defense was contributory negligence. The accident happened while the plaintiff was crossing a railroad bridge. He was a laborer on the defendant's railroad. The boss or foreman of the defendant told him that it was safe for him to cross the bridge until half past 7 o'clock. The lower court charged the jury that they had the right to take into consideration this statement made to the plaintiff by the boss, and an exception was taken to that portion of the charge. The supreme court held that the charge was correct; that the testimony of the plaintiff that the boss or foreman of the defendant had told him that no train or engine would come over the bridge until about 7 o'clock or half past 7 o'clock was properly to be taken into consideration by the jury in determining the question of negligence.

In Etting v. Bank, 11 Wheat. 59, 6 L. Ed. 419, it was held, Chief Justice Marshall delivering the opinion of the court, that "it is the province of the court to construe written instruments, yet, where the effect of such instruments depends, not merely on the construction and meaning of the instrument, but upon collateral facts in pais and extrinsic circumstances, the inferences of fact to be drawn from them are to be left to the jury."

This telegram must be viewed in the light of the other evidence. It was proved that Campbell's crew had on some occasions been ordered out at night; that they were sometimes called on to work out of their section; that they usually began work about daylight or a little after; and that it would have taken Campbell about 1 hour and 20 minutes to go on the hand car to the rock cut, as directed in Burke's telegram. The import and effect of the telegram depend on the other facts, and they should all be considered in determining whether he exercised the degree of care and prudence "incumbent upon a man of ordinary prudence in the same calling." In speaking of the inferences to be drawn from documentary evidence when connected with facts proved orally, Chief Justice Marshall, in the case last cited, said: "These subjects are peculiarly proper for the consideration of the jury."

The defendant company had printed rules and regulations for its government, which the employés were required by one of the rules to provide themselves with. Part of one of these rules was as follows:

"They must not run their hand cars within ten minutes of the time of a passenger train, and always run with great caution, keeping a sharp lookout for material and other extra trains. They will under no circumstances allow their hand car to be used unless they accompany it, nor run it on Sundays or after dark without special permission of the division superintendent."

The contention of the defendants was that the plaintiff's intestate had violated this rule, and was therefore guilty of contributory negligence. It is the duty of a company engaged in a complex business to establish and enforce definite regulations for the protection of its employés. It is the duty of the employés to obey such rules. It was incumbent on the defendants not only to prove the existence of the rule,

but to show that the plaintiff's intestate had knowledge of it. Railroad Co. v. Graham, 94 Ala. 545, 10 South. 283; Sprong v. Railroad Co., 58 N. Y. 56. The defendants sought to show that Campbell had knowledge of these rules. The evidence on that subject is very meager. A witness testified that he gave Campbell's predecessor one of the books containing the rules, and that he saw the book in Campbell's pocket four or five years before the accident. From this and other evidence in the record it is true that it might be inferred that Campbell had knowledge of them, but it is not, we think, an inference that should be drawn by the court. The evidence is not of that direct and indisputable character that would justify the court in determining that question, and it is not without conflict. The plaintiff's evidence in rebuttal tended to show that the book of rules furnished for the Brownsboro section was in the possession of John Hunt, the depot agent for the defendants at Brownsboro, and that it was kept in his desk. The burden was on the defendants to show that Campbell had knowledge of the rules. This could be done by direct evidence, or in many ways by circumstantial evidence. The court could not, on the facts as proved in this case, do otherwise than submit the question of Campbell's knowledge of the rule to the jury.

There is another view of this case that shows the court did not err in refusing to direct a verdict for the defendants. The chief reason urged why the case should have been taken from the jury is that the plaintiff's intestate was guilty of contributory negligence. This reason, if well founded on fact, does not meet the entire case on trial, because in some of the counts the defendants were charged with committing the act complained of wantonly, recklessly, and negligently. To these counts the defense of contributory negligence was not good. They were at issue only on the plea of not guilty. In cases where the injury is wanton or willful, the doctrine of contributory negligence has no application. A demurrer was properly sustained to such plea to these counts. Now, if there was evidence before the jury tending to prove the allegation of these counts, and to show that the acts complained of were committed wantonly and recklessly, then the case could not properly be taken from the jury, even if the evidence, admitted under the pleas to the other counts charging simple negligence, as matter of law had shown contributory negligence. It is clear that one who commits a wrong willfully cannot defend by saying that the injured person was guilty of negligence. Cooley, Torts (2d Ed.) p. 810; Beach, Contrib. Neg. (2d Ed.) § 64; Railroad Co. v. Markee, 103 Ala. 160, 15 South. 511. The evidence, we think, to say the least, tended to show wanton negligence, or reckless indifference to the probable consequences of the acts complained of, which is construed to be the equivalent of intentional or willful.

In Electric Co. v. Bowers, 110 Ala. 328, 331, 20 South. 345, the court said:

"To constitute a willful injury, there must be design, purpose, intent to do wrong and inflict the injury. Then there is that reckless indifference or disregard of the natural or probable consequences of doing an act, or omission of an act, designated, whether accurately or not, in our decision, as 'wanton negligence,' to which is imputed the same degree of culpability, and held to be

equivalent to willful injury. A purpose or intent to injure is not an ingredient of wanton negligence. Where either of those exist, if damage ensues, the injury is willful. In wanton negligence, the party doing the act or failing to act is conscious of his conduct, and, without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury. These are the distinctions between simple negligence, willful injury, and that wanton negligence which is the equivalent of willful injury, drawn and applied in our decisions."

In Railroad Co. v. Hill, 90 Ala. 71, 80, 8 South. 90, 9 L. R. A. 442, the court said:

"We are satisfied that it tended to show a condition of the track, not to know and remedy which was such gross negligence on the part of the company as implied recklessness and wantonness,—such indifference to the probable consequences of its continual use as is the equivalent of intentional wrong, or a willingness to inflict the injuries complained of."

In the late case of Railroad Co. v. Markee, 103 Ala. 160, 15 South. 511, the court used the expression, "willful injury, or such wanton negligence as to be its equivalent." See, also, Railroad Co. v. Orr, 121 Ala. 489, 26 South. 35.

We are not called on to decide whether the evidence sustains these counts. The inquiry is, was there evidence tending to sustain them that made it a question proper to be submitted to the jury? We think the question was one for the jury.

The other charges asked for and refused raise questions settled by the principles already stated in this opinion, or are shown to have been correctly refused by reference to evidence in the record. We do not deem it necessary to comment on them separately. We find no error in the record. The judgment of the circuit court is affirmed.

PARDEE, Circuit Judge. I dissent from the decision of the court in this case, because, in my opinion, the evidence did not show, nor tend to show, that the engineer in charge of the locomotive at the time that John W. Campbell was killed was guilty of such wanton or willful negligence as would justify a recovery in the face of the well-established, if not undisputed, contributory negligence of the said John W. Campbell.