## LACEY v. LOUISVILLE & N. R. CO.

### (Circuit Court of Appeals, Fifth Circuit. March 19, 1907.)

### No. 1,611.

1. RAILROADS — DEATH AT CROSSING — WANTONNESS — CONTRIBUTORY NEGLI-
GENCE.

Contributory negligence is no defense to an action against a railroad
company for the willful or wanton killing of plaintiff's intestate at a
railroad crossing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1085.]

2. SAME—WILLFULNESS—EVIDENCE—QUESTION FOR JURY.

Where defendant railroad company kicked certain freight cars across a
public crossing likely to be used by pedestrians or vehicles at any time,
without any one to control their movements or to give warning of their
approach, and such cars came in contact with plaintiff's intestate as he
was about to cross, whether the railroad company's act was willful or
wanton was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 1192.]

In Error to the Circuit Court of the United States for the Southern
District of Alabama.

The plaintiff in error, and plaintiff below, brought her action in the circuit
court of Conecuh county, Ala., against the Louisville & Nashville Railroad
Company for the homicide of her husband on a public crossing over the track
of the defendant railroad at Sparta, in Conecuh county, Ala. On motion of
defendant the cause was removed to the Circuit Court of the United States
for the Southern District of Alabama.

The facts connected with the occurrence resulting in the death of plaintiff's
intestate and her husband were as follows: The railroad tracks at the point
in question run nearly north and south, and the public crossing nearly east
and west. The post office, depot, and the depot platform were on the east
side of the crossing, and deceased lived on the west side of the railroad track
about 40 or 50 yards from the public road. On the 21st of April, 1905, at
about 2 o'clock in the afternoon, the deceased started over the crossing on his
way to the post office. A slag train had been standing for some time on the
side track north of the crossing. As deceased started across he was followed
by his two daughters, who were some few feet behind him. Just at that time
a freight train was coming up approaching the crossing from the south, and
apparently very near the crossing. The deceased crossed swiftly in front of
it and approached the side track, which was some eight or nine feet from the
main line on which the freight train came from the south. As deceased
stepped upon the side track he was struck by some cars detached from the
slag train, consisting of a caboose and one or two slag cars which were being
"kicked" over the crossing. Deceased was struck, knocked down, dragged for
some distance, and killed.

All the evidence seems to show that the deceased did not see the approach-
ing loose cars before they struck him. So far as the evidence shows, there
was no one upon the detached cars which were being "kicked" over the crossing
to control their movements, or to give warning of their approach, and the
evidence in the record all tends to show that no warning of any kind was
given. The evidence shows that the day on which this homicide occurred was
strawberry shipping day at Sparta, and that quite a number of people were
there on that business; in some parts of the evidence it is said from 25 to
30, and some other witnesses put the number at from 25 to 50. The evidence
also shows that the crossing was used that day to an unusual extent. The
train on which the strawberries were to be shipped was due to arrive at
Sparta about 3 o'clock in the afternoon, a short time after the homicide oc-
curred.

There was an amendment to plaintiff's declaration which alleged that the defendant's agents and servants "wantonly ran one of said cars against plaintiff's intestate and thereby caused his death." The defendant pleaded contributory negligence in several forms, some of the pleas being upon the ground that the deceased was standing on the track at the crossing at the time he was stricken. There was a demurrer to the plea of contributory negligence on the ground that it was no answer to paragraph C of the amended declaration, which charged wantonness, and the demurrer was sustained. The case went to the jury, and upon the conclusion of plaintiff's evidence, embodying substantially what has been briefly stated above, the court directed a verdict in favor of the defendant, and this action of the court is assigned as error.

D. M. Powell, Edward M. Robinson, and John W. McAlpine, for plaintiff in error.

Gregory L. Smith and Harry T. Smith, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge, after stating the facts, delivered the opinion of the court, as follows:

We think that this cause should have been submitted to the jury. We are not sure, under all the facts and circumstances connected with the case as brought out by the plaintiff's evidence, that it should not have gone to the jury upon the question of negligence and contributory negligence, without reference to a further view of it, which is thought to be controlling. The learned judge who tried this case in the Circuit Court had sustained a demurrer to the pleas of contributory negligence in so far as these pleas operated against paragraph C of the amended declaration, which charged that the act of the defendant's servants and agents in kicking the cars over a public crossing without any one to control their movements or to give warning of their approach was wanton. The effect of this was to hold that contributory negligence —that is, ordinary negligence—was no bar to wanton or willful misconduct. We agree with this view of the law, and we think it also required the submission of the case to the jury upon the question as to whether the acts of defendant's employés, in sending these cars over the crossing in the way they did, was wanton and willful, in that it was done in total disregard of the safety of persons using the crossing.

The law with reference to wanton and willful misconduct on the part of a defendant, and contributory negligence on the part of the plaintiff, was stated by this court (Judge Pardee dissenting), in McGhee v. Campbell, 42 C. C. A. 94, 101 Fed. 936, as follows:

"There is another view of this case that shows the court did not err in refusing to direct a verdict for the defendants. The chief reason urged why the case should have been taken from the jury is that the plaintiff's intestate was guilty of contributory negligence. This reason, if well founded on fact, does not meet the entire case on trial, because in some of the counts the defendants were charged with committing the act complained of wantonly, recklessly, and negligently. To these counts the defense of contributory negligence was not good. They were at issue only on the plea of not guilty. In cases where the injury is wanton or willful, the doctrine of contributory negligence has no application. A demurrer was properly sustained to such plea to these counts. Now, if there was evidence before the jury tending to prove the allegation of these counts, and to show that the acts complained of were committed wan-

tonly and recklessly, then the case could not properly be taken from the jury. even if the evidence, admitted under the pleas to the other counts charging simple negligence, as matter of law had shown contributory negligence. It is clear that one who commits a wrong willfully cannot defend by saying that the injured person was guilty of negligence. Cooley, Torts (2d Ed.) p. 810; Beach, Contrib. Neg. (2d Ed.) § 64; Railroad Co. v. Markee, 103 Ala. 160, 15 South. 511, 49 Am. St. Rep. 21. The evidence, we think, to say the least, tended to show wanton negligence, or reckless indifference to the probable consequences of the acts complained of, which is construed to be the equivalent of intentional or willful."

Judge Shelby, delivering the opinion of the court in that case, also quotes from Electric Co. v. Bowers, 110 Ala. 328, 331, 20 South. 345, 346, this language:

"To constitute a willful injury, there must be a design, purpose, intent to do wrong and inflict injury. Then there is that reckless indifference or disregard of the natural or probable consequences of doing an act, or omission of an act, designated, whether accurately or not, in our decisions, as 'wanton negligence,' to which is imputed the same degree of culpability, and held to be equivalent to willful injury. A purpose or intent to injure is not an ingredient of wanton negligence. Where either of those exist, if damage ensues, the injury is willful. In wanton negligence, the party doing the act or failing to act is conscious of his conduct, and, without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury. These are the distinctions between simple negligence, willful injury, and that wanton negligence which is the equivalent of willful injury, drawn and applied in our decisions."

He also quotes from Railroad Co. v. Hill, 90 Ala. 71, 80, 8 South. 90, 92, 9 L. R. A. 442, 24 Am. St. Rep. 764, to this effect:

"We are satisfied that it tended to show a condition of the track not to know and remedy which was such gross negligence on the part of the company as implied recklessness and wantonness; such indifference to the probable consequences of its continual use as is the equivalent of intentional wrong, or a willingness to inflict the injuries complained of."

He also cites to the same effect from Railroad Co. v. Markee, 103 Ala. 160, 15 South. 511, 49 Am. St. Rep. 21, and Railroad Co. v. Orr, 121 Ala. 499, 26 South. 35.

These Alabama decisions, if based on a statute of Alabama, would be controlling; and even if not based on a statute, would be highly persuasive authority in any United States court held in that state. The cases hold substantially on the question involved here that reckless disregard of what may be the probable consequences of an act calculated to cause injury is wanton negligence, and is the equivalent of willful misconduct. This doctrine seems to us to be entirely sound. To throw cars over a public crossing likely to be used by pedestrians or vehicles at any time, without any one to control their movements or to give warning of their approach, is certainly reprehensible, and might, or might not, be found by the jury, according to the circumstances surrounding the particular case, such a total disregard of the safety of others as that it would amount to wanton and willful misconduct. The practice of making flying switches, which we understand embraces what is here called "kicking" cars over public crossings, is discussed by Beach on Contributory Negligence (3d Ed.) § 217, citing a large number of authorities supporting the text, as follows:

"The method of switching known as making a 'running' or 'flying' switch is constantly a fruitful source of accident to persons walking or being upon the tracks. It consists in detaching the portion of the train to be switched off while the cars are in motion, the forepart of the train advancing with increased speed, while the rear portion, proceeding more slowly, is, at the proper time, switched off upon the desired track; or the engine may push forward a car or part of a train with considerable speed, and then, giving it a strong propulsion, send it off alone on the desired switch. This practice, in many courts, is condemned as negligent, even towards trespassers. And when the cars are suffered to run over a crossing, after being detached from the train, in making a flying switch, whereby travelers are injured, it is held negligence of an aggravated nature, and the practice is not unfrequently sharply denounced by the judges."

As there must be another trial of this case, it would be improper for the court to express any further opinion of the facts than is necessary to state the views entertained on the questions controlling it. The defendant's evidence may change materially the aspect of the case, but in our opinion the plaintiff's evidence, as shown by this record, entitled her to go to the jury.

The judgment of the court below is reversed, with directions to grant a new trial.

PARDEE, Circuit Judge, does not concur.