GROSMAN et al. v. UNION TRUST CO.*

(Circuit Court of Appeals, Fifth Circuit. January 4, 1916. Rehearing Denied February 1, 1916.)

No. 2831.

1. CONTRACTS ⬤⇒101—ACTIONS—LAW GOVERNING—PUBLIC POLICY.
   A contract, though valid under the law of the place where it was made, will not be enforced in a jurisdiction where to so enforce it would involve a disregard of the established public policy of that jurisdiction.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 455-460; Dec. Dig. ⬤⇒101.]

2. HUSBAND AND WIFE ⬤⇒87—LIABILITY OF MARRIED WOMEN ON CONTRACTS—CONTRACTS OF SURETYSHIP—"ANOTHER."
   Rev. St. Tex. 1911, art. 4621, as amended by Act March 21, 1913 (Acts 33d Leg. c. 32), provides that neither the separate property of the wife, nor the rents from her real estate, nor the interest on bonds and notes belonging to her, nor her personal earnings, shall be subject to the payment of debts contracted by the husband. Article 4624, as amended by the same act, after providing that the separate property of the husband and certain community property shall not be subject to the payment of debts contracted by the wife, except for necessaries, contains a proviso that the wife shall never be the joint maker of a note, or a surety on any bond or obligation of another, without the joinder of her husband with her in making such contract. Held, that a contract made by the wife alone, by which she undertakes to become a surety on a bond or obligation on which her husband is a principal, is forbidden by the statute, as the word "another" cannot reasonably be given such a meaning as

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Application for certiorari granted by the Supreme Court March 20, 1916.

would prevent the husband from being regarded as "another" than his wife, and the wife may not become a surety on bonds and obligations in which the husband cannot join.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 346–353, 798; Dec. Dig. ☞87.

For other definitions, see Words and Phrases, First and Second Series, Another.]

3. CONTRACTS ☞101—LAW GOVERNING—PUBLIC POLICY.

Act Tex. March 21, 1913 (Acts 33d Leg. c. 32), amending Rev. St. 1911, arts. 4621, 4622, 4624, governing a married woman's liability on contracts, evidences the establishment, or the continuance, with the modifications thereby made, of a well-defined public policy of preventing the diminution of the estates of married women by unauthorized transfers or conveyances, or by subjecting them to the payment of forbidden obligations; and a contract made in Illinois by a married woman residing in Texas, whereby she became a surety for her husband, being contrary to this public policy, cannot be enforced in the courts of Texas, or in courts administering the laws of Texas.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 455–460; Dec. Dig. ☞101.]

Appeal from the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Action by the Union Trust Company against Minnie Kahn Grosman and others. Judgment for plaintiff, and defendants appeal. Reversed as against the defendant named.

F. M. Etheridge, Joseph M. McCormick, and H. L. Bromberg, all of Dallas, Tex., for appellants.

Wm. H. Atwell, of Dallas, Tex., for appellee.

Before PARDEE and WALKER, Circuit Judges, and SPEER, District Judge.

WALKER, Circuit Judge. On May 23, 1914, the appellant Mrs. Minnie Kahn Grosman, who has been a resident of Texas since her birth, while on a visit to Chicago, accompanied by her husband, Hiram Grosman, also a resident citizen of Texas, executed a guaranty or suretyship contract, signed by her alone, by the terms of which she made herself a surety for a debt of her husband's firm, Hiram Grosman & Co., evidenced by its note, signed in the firm name by her husband. Some months after Mrs. Grosman's return to her home in Texas, and after the maturity of the obligation of Hiram Grosman & Co. which was referred to in the suretyship contract, this suit was brought against her, against her husband's firm, and against the individuals composing it. The objects of the suit were a recovery against the defendants other than Mrs. Grosman on the obligation for which she signed as surety or guarantor, and also on other obligations, the foreclosure of an asserted lien on personal property by which those obligations were secured, and a recovery against Mrs. Grosman on her contract above mentioned. At the time of the institution of the suit a writ of attachment was issued, which was levied on real estate in the city of Dallas which belonged to Mrs. Grosman and was her separate property. Mrs. Grosman duly pleaded her coverture and raised the

question of the right of the plaintiff to have enforced by the court in which the suit was brought the liability which was asserted against her. By the decree appealed from the court adjudged in favor of the plaintiff and against Mrs. Grosman the amount called for by her guaranty or suretyship contract, less a credit allowed on account of the application upon the demand of the plaintiff of the proceeds of the sale of personal property upon which a lien in its favor was decreed, and for the amount decreed against Mrs. Grosman ordered the foreclosure of the lien of the writ of attachment levied on her separate property and the sale of that property.

[1] .Evidence was adduced to the effect that under the law of Illinois, the state in which Mrs. Grosman signed the instrument sought to be enforced against her, her act had the effect of creating a valid and enforceable contract. It is contended in behalf of Mrs. Grosman that, notwithstanding the validity of the contract where it was made, the decree appealed from was unwarranted, because the effect of it was to contravene a public policy of Texas, established by express legislative enactment. The doctrine which this contention invokes is a well-settled one. A statement and application of it are found in the opinion in the case of The Kensington, 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. 190. That case involved the question of the enforceability in the courts of the United States of a provision of a contract of a carrier made in Belgium; the provision being valid there, and the contract expressly providing that "all questions arising hereunder are to be settled according to the Belgium law, with reference to which this contract is made." It was insisted that the law of Belgium should be applied, though the provision in question contravened a public policy applied by the courts of the United States. With reference to this position the court said:

, "The contention amounts to this: Where a contract is made in a foreign country, to be executed at least in part in the United States, the law of the foreign country, either by its own force or in virtue of the agreement of the contracting parties, must be enforced by the courts of the United States, even although to do so requires the violation of the public policy of the United States. To state the proposition is, we think, to answer it. It is true, as a general rule, that the lex loci governs, and it is also true that the intention of the parties to a contract will be sought out and enforced. But both these elementary ·principles are subordinate to and qualified by the doctrine that neither by comity nor by the will of contracting parties .can the public policy of a country be set at naught." The Kensington, supra, 183 U. S. 269, 22 Sup. Ct. 104, 46 L. Ed. 190.

The result was that the court, concluding that the provision in question was one which contravened a rule of public policy applied in the forum in which· the provision came into question, decided that it was not there enforceable. In a much earlier case in the same court the ruling was to the effect that the enforcement of a contract, no matter where made or where to be executed, if that contract is in violation of the law or contravenes the public policy of·the government in a forum of which its enforcement is sought, cannot be compelled in that forum. Kennett et al. v. Chambers, 14 How. 38, 52, 14 L. Ed. 316. For other statements and applications of the same rule, see Emery v. Burbank, 163 Mass.·326, 39 N. E. 1026, 28 L. R. A. 57, 47 Am. St. Rep. 456; 5

Ruling Case Law, 944, and notes. In an action to enforce any kind of liability, the law of the forum is material in so far as it sets a limit of policy beyond which such obligations as the one asserted will not be enforced there. Cuba R. R. Co. v. Crosby, 222 U. S. 473, 478, 32 Sup. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40. We do not understand that there is a controversy in this case as to the proposition that a court charged with the administration of the laws of Texas is not required to enforce a contract made in another jurisdiction, and valid there, when to do so involves a disregard of an established public policy of Texas. But it is contended by the counsel for the appellee that the statute law of Texas, which is invoked by the counsel for the appellant, does not evidence the existence of a public policy of that state which would be contravened by the enforcement of the contract in question by a court which administers the laws of that state.

· [2] This brings us to a consideration of the statute laws of Texas, to which our attention is directed. Before the taking effect of an act of the Legislature of Texas which was approved March 21, 1913 (Acts 33d Leg. c. 32), article 4621 of the Revised Statutes of Texas of 1911 defined the separate property of the husband and of the wife; article 4622 defined the community property of the husband and wife; and article 4624 specified what contracts could be made by the wife. Under the law as it existed while the three articles mentioned were in force, a married woman could only bind herself by a contract entered into for necessaries of herself or children or for the benefit of her separate estate. Cruger v. McCracken, 87 Tex. 584, 30 S. W. 537; Noel v. Clark, 25 Tex. Civ. App. 136, 60 S. W. 356; Stroter v. Brackenridge, 102 Tex. 386, 118 S. W. 634. In immediate connection with the provisions above mentioned is found the following, being article 4625 of the same compilation:

"*Judgment and Execution in Such Cases.*—Upon the trial of any suit as provided for in the preceding article, if it shall appear to the satisfaction of the court and jury that the debts so contracted or expenses so incurred were for the purposes enumerated in said article, and also that the debts so contracted or expenses so incurred were reasonable and proper, the court shall decree that execution may be levied upon either the common property or the separate property of the wife, at the discretion of the plaintiff."

The act of March 21, 1913, amended articles 4621, 4622, and 4624. It did not mention article 4625. That article remains in force to some extent, at least, unless it has been deprived of all operative effect as a result of the incompatibility of any of its provisions with those of the later enactment of March 21, 1913. Article 4621, as it was amended by that act, defines the separate properties of the husband and of the wife, provides, subject to qualifications in the case of the wife, for each having the sole management, disposition, and control of his or her separate property, specifies how named separate property of the wife may be conveyed or transferred, and contains the provision that:

"Neither the separate property of the wife, nor the rents from the wife's real estate, nor the interest on bonds and notes belonging to her, nor her personal earnings shall be subject to the payment of debts contracted by the husband."

.Article 4622, as amended, specifies what shall be deemed the common property of the husband and wife—commonly called the community property—and designates the part of it which shall be under the control, management, and disposition of the wife alone, "subject to the provisions of article 4621, as hereinabove written." Article 4624, as amended, reads as follows:

"Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payments of debts contracted by the wife, except those contracted for necessaries furnished her or her children: Provided, the wife shall never be the joint maker of a note or a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

Whatever enlargement of a married woman's right to bind herself by contract can be regarded as having been effected by the act above referred to is subject to the qualification or exception stated in the proviso found in amended article 4624, which has just been quoted. So far as that proviso affects the right of a married woman to become a surety, its explicit prohibition is that:

"The wife shall never be * * * a surety on any bond or obligation of another without the joinder of her husband with her in making such contract."

We think the language of this provision forbids a married woman becoming surety for another, unless her husband joins her in the suretyship contract. The word "another," used as it is in that proviso in describing any bond or obligation of any one besides the wife, cannot reasonably be given such a meaning as would prevent the husband being regarded as another than his wife within the purpose of the proviso. Giving to the proviso the meaning its words express, for the bond or obligation of another to be one as to which a married woman may become a surety, it must be one with reference to which her husband may join her in a contract of suretyship. This excludes a bond or obligation upon which the husband is a principal, as he cannot be his own surety. The result is that the wife is forbidden to become a surety when, from the nature of the case, her husband cannot join her as a cosurety. At any rate, the husband, in becoming a principal on a bond or obligation, cannot well be regarded as joining his wife in the separate contract by which she undertakes to bind herself as a surety. The two obligations are separate and distinct in their natures and consequences, though one of them is collateral to the other.

Whatever doubts as to the correctness of these conclusions might exist, if the proviso in question stood by itself, we think are removed when it is considered in connection with the above-quoted provision of article 4621 as amended. The embodying of the two provisions in the same statute we think clearly manifests a legislative purpose to forbid a married woman becoming a surety for an obligation on which her husband is a principal. It cannot be supposed that it was in the legislative contemplation that the quoted provision of amended article 4621, prohibiting the subjecting to the payment of debts contracted by the husband of the wife's separate property and specified parts of the

community property, was to be effective only in the case of the wife failing to become a surety for her husband's debts. If it was so supposed, the will of the Legislature would not control, unless it happened to coincide with that of the wife. The conclusion is that a contract made by the wife alone, by which she undertakes to become a surety on a bond or obligation on which her husband is a principal, is one which a married woman is forbidden by the statute law of Texas to make, and the enforcement of which against her separate property or against specified parts of the common property of herself and husband is prohibited by the same law.

[3] When the act of March 21, 1913, is considered in connection with the previously existing statute law which it amended, we think it clearly discloses a legislative purpose to enlarge the capacity of the married women of Texas to bind themselves by contract and to extend their powers over property, both their separate property and specified parts of the community property; but we think, also, that with equal clearness it manifests a purpose to provide, for the protection of the property interests of Texas married women, safeguards which are put beyond their power to remove or dispense with. The act evidences the establishment, or rather the continuance with modifications it makes, of a well-defined public policy of preventing the diminution of the estates of the married women of Texas by unauthorized transfers or conveyances, or by subjecting them to the payment of forbidden obligations. A notable feature of that policy is disclosed by the prohibition found in the provision of article 4621, as it was amended, that:

"Neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings shall be subject to the payment of debts contracted by the husband."

An effect of this provision is to forbid courts which administer the laws of Texas to afford a remedy for the enforcement against the mentioned property interests of the wife of debts contracted by the husband. The denial of such a remedy is general in its terms. It is not confined to Texas contracts of the kind mentioned, but is broad enough in its terms to apply to such contracts wherever made, though they may be valid and enforceable where they were made. It well may happen that an attempt to enforce an obligation, recognized as valid where it was entered into, will fail where the remedy sought is one which is forbidden by the law of the forum. Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104; and see notes to Union National Bank v. Chapman, 57 L. R. A. 513, 522, and to International Harvester Co. v. McAdam, 26 L. R. A. (N. S.) 774. Certainly it would be overtaxing the comity, which reasonably may be expected to influence the forum resorted to, to call for the enforcement by it of such a remedy, when the obvious purpose of the law of the forum in forbidding the remedy is to prevent the setting at naught of a public policy established by the same law.

The conclusions are that it is a part of the public policy of Texas, established by statute, to prevent the separate property of its married women being subjected to the payment of such a demand as the one

asserted against Mrs. Grosman in this case, and that the decree appealed from is erroneous, in that it subjected her separate property to the payment of that demand.

It follows that the decree against Mrs. Grosman should be reversed; and it is so ordered.