### FLUCKEY et al. v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Sixth Circuit. June 5, 1917.)

No. 2944.

1. RAILROADS ☞328(4)—CROSSING ACCIDENTS—DUTY TO LOOK AND LISTEN—OBSTRUCTED CROSSINGS.

When an automobile reached a point 40 feet from a railroad crossing, buildings and standing cars had so far ceased to obstruct the driver's view that he could see 120 feet along the track upon which a car was approaching. It was broad daylight, there was neither smoke nor dust, and there was no other moving train, nor anything to distract the driver's attention. He was familiar with the crossing, and knew that by reason of the obstructions it was dangerous, and must be approached cautiously. *Held*, that it was his clear duty to look as soon as he could see, and to have his machine under such control that, if necessary, he could stop before getting into the danger zone, and in driving upon the track in front of an approaching car, which could have been seen, he failed to exercise the care of a reasonably prudent man.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1061.]

2. RAILROADS ☞339(2)—CROSSING ACCIDENTS—WANTON OR WILLFUL NEGLIGENCE.

Gross and wanton negligence of a railway company, to avoid the contributory negligence of a person struck by a railway motor car, must be

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

really willful **or** so highly reckless as to constitute the equivalent of willfulness.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1085.]

3. RAILROADS ⟨⟩339(2)—CROSSING ACCIDENTS—WANTON OR WILLFUL NEGLIGENCE.

Though it is the rule in Tennessee that the violation of a city ordinance, by a railway company contributing to a collision, is negligence per se, and not merely evidence of negligence, the simultaneous violation of three ordinances does not, regardless of the character of the ordinances or the nature of the violations, indicate a degree of indifference or recklessness having the same effect to avoid contributory negligence as deliberate willfulness.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1085.]

4. RAILROADS ⟨⟩339(2)—CROSSING ACCIDENTS—WANTON OR WILLFUL NEGLIGENCE.

Plaintiff's automobile was struck by a railway motor car traveling 12 miles an hour, in violation of an ordinance limiting the speed of railway cars or trains to 6 miles an hour, at a crossing where there were neither gates nor a flagman, as required by an ordinance at all crossings within the city limits. In violation of another ordinance a car was standing within 150 feet of the crossing. There had been no municipal determination that the particular crossing needed gates or a flagman, and the conditions at the crossing did not indicate an imperative necessity therefor, nor did any former accidents or complaints appear. The standing car had no causal connection with the injury, as it did not obstruct the view after a building was passed. The speed of the car was less than that permitted by ordinances in the case of street cars. *Held*, that the concurrent violation of the three ordinances did not amount to wantonness, avoiding the effect of plaintiff's contributory negligence, especially where it appeared that the motorman was vigilant, was using his whistle and his bell seasonably, and that he saw the automobile and put on his brakes at the earliest possible instant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1085.]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Mrs. Basset Fluckey administratrix, and others, against the Southern Railway Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

W. H. Fitzhugh, of Memphis, Tenn., for plaintiffs in error.
Caruthers Ewing, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, MACK, and DENISON, Circuit Judges.

DENISON, Circuit Judge. Mr. and Mrs. Fluckey, in an automobile which he was driving northerly along a street in Memphis, undertook to cross the tracks of the Southern Railway Company. A gasoline motor car, operated by the railway in interurban service was approaching from the west. There was a collision, in which Mr. Fluckey was killed and his wife hurt. She brought this suit in the court below to recover damages, and, after a trial, the court directed a verdict for the defendant, upon the ground of contributory negligence. She brings the case here on error, claiming that the queston of contributory negligence was for the jury, and that the negligence of the railway company

was so gross and willful that contributory negligence, even if established, should not bar recovery.

[1] Upon the first question, it is unnecessary to go into great detail. We are satisfied that the court below was right. When the automobile reached a point 40 feet from the rail, the buildings and the standing cars on the driver's left had so far ceased to obstruct his view that he could see 120 feet along the straight track upon which the car was approaching, and at that moment the car was not more than 100 feet from the point of collision. It was broad daylight, there was neither smoke nor dust to obscure the view, there was no other moving train to drown the noise of the approaching car, nor was there anything to distract the driver's attention. It is not to be disputed that, if the driver had looked at the first instant when looking would do any good, he would have seen the car coming. He was familiar with the crossing, and knew that, by reason of the obstructions, it was a dangerous crossing and must be approached cautiously. His clear duty was not only to look as soon as he could see, but to have his machine under such control that, if necessary, he could stop before getting into the danger zone. In this respect, the case is to be distinguished from that of one driving horses, where to undertake to stop so near the rail may involve danger. Flannelly v. D. & H. R. R., 225 U. S. 597, 604, 32 Sup. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154; N. Y. C. R. R. v. Maidment (C. C. A. 3) 168 Fed. 21, 23, 93 C. C. A. 413, 21 L. R. A. (N. S.) 794; Brommer v Pa. R. R. (C. C. A. 3) 179 Fed. 577, 580, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924; Chase v. N. Y. C. R. R., 208 Mass. 137, 94 N. E. 377 Under these undisputed facts, there can be no tenable basis for a finding that Mr Fluckey exercised that degree of care which would be observed by a reasonably prudent man in such a situation.

The case involves no question of imputing to a passenger the negligence of a driver, because Mrs. Fluckey testifies that she had assumed the duty of looking out for danger at this crossing and was undertaking to give any warnings that might be necessary. In this respect, as well as upon the general subject, the facts of this case bear very close analogy to those passed upon by this court in Erie R. R. v. Hurlbert, 221 Fed. 907, 137 C. C. A. 477.

[2] Whether or not the gross and wanton negligence of the defendant will always be a sufficient avoidance of the plaintiff's contributory negligence, it must at least be either really willful, or so highly reckless as to constitute the equivalent of willfulness. Lacey v. Louisville R. R. (C. C. A. 5) 152 Fed. 134, 81 C. C. A. 352; Atchison Ry. v. Baker, 79 Kan. 183, 98 Pac. 804, 21 L. R. A. (N. S.) 427, note; Iowa Ry. v. Walker (C. C. A. 8) 203 Fed. 685, 121 C. C. A. 579. The plaintiff here does not claim any evidence tending to show an intention on the part of the motorman to injure the plaintiff nor any actual willfulness. She seeks to build up a constructive willfulness through the cumulative effect of the violation of city ordinances. One ordinance required gates or flagmen at all railroad crossings within the corporate limits; this crossing had neither. Another forbade that railroad cars should be left standing within 150 feet of the highway crossing, so that they would obstruct the view down the track; a car was here standing

within that distance. A third ordinance (as we assume for the purpose of this opinion) limited to 6 miles per hour the rate of speed of all trains or cars within the city limits; this motor car was moving at a higher speed.

It has been decided by the highest court of Tennessee that the violation of a city ordinance in a manner contributing to a collision of this kind is not merely evidence of negligence, but is negligence per se. Ry. v. Haynes, 112 Tenn. 712, 81 S W. 374. Whether this holding is so far a matter of statutory construction that it binds this court, or whether it pertains rather to a question of general law, we need not decide; for present purposes, we accept it as the correct rule. No one claims, however, that the violation of a single ordinance is even evidence of wanton or willful negligence; and, indeed, no reason is suggested upon which such a claim could have been based.

[3] Plaintiff's position is that the simultaneous violation of three city ordinances indicates a degree of indifference or recklessness which should have the same effect as deliberate willfulness. We cannot think that this inference is permissible, merely from this basis and regardless of the character of the ordinance or the nature of the violation. If the breaking of one ordinance is not of itself at all indicative of willfulness, the multiplication of such instances cannot create a basis of inference otherwise nonexistent. An analogy may be suggested to cases where each of several facts may be of itself no proof of fraudulent intent, but where the association of all these facts may tend to raise the inference of fraud. The analogy is not very close. In matters of fraud, the question of intent is involved, and facts separately innocent may tend to color the intent; but in cases like the present, the intent to run over a traveler upon the highway has no connection with the intent not to observe the ordinances, and the utmost that can be established by the breach of several ordinances is a general indifference to the observance of municipal regulations. Between this inference and the other one, there is no bridge; and the case is one for the application of the arithmetical rule that the addition of nothing to nothing cannot make something.

[4] A review of all the cases cited by plaintiffs develops that in each one wanton or willful negligence was inferred from the character of defendant's acts, and not primarily merely from the ordinance violations; and when we turn aside from the theory that the breach of three ordinances in gross inherently tends to show wantonness, and consider the nature and effect of the breaches here involved, we get the same result. There had been no municipal determination that this particular crossing needed gates or a flagman; the ordinance was equally imperative as to every crossing in the city; and we must take notice of the vast number of such crossings within the corporate limits of every large city, where the degree of need for this precaution is not extreme. There is no evidence of a practice to run trains here at high speed, nor of such conditions that a careful traveler may not protect himself, nor of such dense traffic and distracting surroundings as to indicate imperative necessity for a guard. Neither do there appear former accidents or complaints, or anything fairly supporting the inference that the fail-

ure to provide gates or a flagman was gross or wanton or willful negligence.

To keep cars standing on side tracks back 150 feet away from a crossing is a measure of extreme prudence, and cannot be said to be demanded by ordinary and reasonable care in all cases—if, indeed, it is, usually. We are clear that the mere breaking of this rule does not of itself indicate any extreme negligence; and whatever violation there was in the present case was practically, if not wholly, without causal connection with the injury, since the standing car in question did not project beyond the line of vision between the edge of the building on the corner and the point 120 feet down the track.

Running a train of cars or a single car at a reckless and dangerous speed over an unguarded and obstructed crossing, might, under some circumstances, indicate wantonness. That is not before us; but, in this case, the ordinance limit was 6 miles an hour, the same ordinances permit street cars on the city streets to run 20 miles an hour, and this car was not exceeding 12 miles an hour. That speed for an interurban car is not, in truth, of itself, reckless or wanton negligence; and even if an ordinance limiting such speed to 6 miles an hour is valid, and even if running at 12 miles an hour is per se negligence, we are confident that is the utmost inference which should be drawn merely from the speed.

We must not be understood as intimating that a concurrent violation of two or more city ordinances might not tend to show gross negligence; but we think this conclusion would come, not as a matter of arithmetic merely, but as a result of the character of the ordinances and the nature of the violations in a given case, considered either separately or compositely; and we might well add that, in the present case, not only was no act involved inherently indicating wantonness or willfulness, but the evidence is substantially undisputed that the motorman was vigilant, was using his whistle and his bell seasonably, and saw the automobile and put on his brakes at the earliest possible instant. The case is not one where the railroad was "kicking" a car across a highway without warning of any nature, nor does it involve any other act of such grossly careless nature.

The District Court was right in declining to submit these questions to the jury. The judgment is affirmed.