## PERNA v. RAPID RY. CO.

(Circuit Court of Appeals, Sixth Circuit. April 12, 1918.)

### No. 3085.

1. RAILROADS ⊕⟶394(6)—INJURY TO PERSON NEAR TRACK—PLEADING WILLFUL NEGLIGENCE.

Where the original declaration alleged that deceased, at the time he was struck and killed by one of the handholds of defendant's interurban car, was apparently unconscious of his danger, an amendment averring that defendant's motorman operated it at an excessive rate of speed, wantonly failed to signal its approach, wantonly failed to observe decedent's position of danger, and wantonly failed to take steps necessary to avoid a collision, must be construed to set up defendant's willful, wanton, and gross negligence, which would excuse contributory negligence on the part of decedent.

2. RAILROADS ⊕⟶391(4)—INJURIES TO PERSONS NEAR TRACKS—CONTRIBUTORY NEGLIGENCE—WILLFUL NEGLIGENCE.

Where the conduct of the motorman in charge of defendant's interurban car was willful and wanton, amounting to a reckless disregard of the rights of others, the contributory negligence of deceased, who, while standing on his peddler's wagon near the tracks, was struck and killed by a handhold on the car, will not defeat recovery.

3. RAILROADS ⊕⟶398(5)—INJURIES TO PERSONS NEAR TRACKS—WILLFUL AND WANTON NEGLIGENCE—EVIDENCE.

In an action for the death of plaintiff's intestate, who, while standing on his peddler's wagon near the tracks, was struck and killed by the handholds on defendant's interurban car, evidence *held* sufficient to warrant the finding that defendant's motorman was guilty of willful and wanton negligence excusing contributory negligence on the part of the intestate.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by Charles Perna, administrator of the estate of Salvatore Perna, deceased, against the Rapid Railway Company. There was a judgment for defendant, and plaintiff brings error. Reversed, with directions to award new trial.

Joseph T. Schiappacasse, of Detroit, Mich., for plaintiff in error.

Corliss, Leete & Moody and Ben S. Pagel, all of Detroit, Mich., for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARRINGTON, Circuit Judge. Action for damages resulting from the death, August 3, 1914, of Salvatore Perna. The case was tried twice in the court below. Upon the first trial the administrator recovered a verdict for $3,455.53. The verdict was set aside and a new trial awarded. The case was by consent tried the second time upon a record of the testimony taken and transcribed at the first trial. After submission of the record to the jury, upon motion of the railway company a directed verdict was rendered in its favor and judgment entered accordingly. The administrator brings error.

The decedent, Perna, had been engaged in peddling fruit from a horse-drawn wagon along the Gratiot road, running in a north and south direction, between Detroit and Mt. Clemens. The railway company was at the time maintaining and operating an interurban electric railway within and along the easterly side of the Gratiot road. At a point some eight miles north of Detroit, the Bloss (or Fraser) road intersects the Gratiot road in an east and west direction. On the morning of the death Perna placed his team on the Gratiot road west of the railroad, near its west rail, for the purpose of selling and delivering fruit at a grocery located upon the northeast corner of these intersecting roads. While Perna was standing at the east side of his wagon he was struck upon the face and head and instantly killed by one of the handholds of a south-bound car of the railway company.

In the declaration under which the first trial took place it is alleged in each count that at the time the decedent received his injury he was "apparently unconscious of his danger, and doing the work in which he was engaged at a point very near the * * * westerly rail of the * * * track, to wit, within ten inches of the same." On the day succeeding rendition of the first verdict the administrator filed an amended declaration comprising only one count, but containing an allegation similar to the one just stated. The two declarations, however, differ, at least in terms, as to the character of the acts and omissions charged; the first averring mere negligence, and the second gross and wanton conduct of the railway company in that by its motorman it "operated the car at an excessive rate of speed" (fifty miles an hour), "wantonly failed" to signal approach of the car, "wantonly failed" to observe Perna's position of danger, and "wantonly failed" to take steps necessary to avoid a collision. The company filed a plea of the general issue. The testimony tends to show that at the time Perna was struck his horses and wagon were headed to the north and standing at a slight angle to the line of the railroad track, the rear end of the wagon being nearest to the track, and that Perna was standing upon a step of the wagon about midway between the front and rear easterly wheels. No part of the wagon or team was struck by the passing cars, there being two cars in the train called a double-header. The motorman standing in his place on the front car saw the horses and wagon when his car was as much as 1,000 feet north of the place of injury, and at something less than that distance, inferentially about 600 feet, he saw Perna cross the track, moving in a westerly direction, and place his hands in the wagon. Perna had received an

order from the grocer and presumably was then and also at the time of his injury at work in selecting fruit in the wagon to fill the order. In passing on the motion for a new trial, the district judge stated that when Perna was struck he was "reaching up into his wagon apparently oblivious to his surroundings."

As respects the speed of the train, the distance within which the motorman could have stopped it, and the giving or not of warning by bell or whistle, the testimony is in conflict. No showing was made as to the distance between the west rail and the place at which Perna was standing when he was struck except through the allegation of the declaration that it was 10 inches; nor does the extent of over-hang of the car appear. Considering Perna's position and the slanting relation of the wagon and horses to the line of the west rail, it would seem that at the moment of the accident Perna was at least as far removed from the west rail as was the nearest portion of the wagon; and since the wagon and horses were not struck at all, and Perna was struck only on the right side of his face and head by the projecting handhold of the car, it is difficult to understand how the injury happened unless it was through swaying of the car as it passed him or through sudden fright causing him to fall backwardly from the step. The motorman himself estimated the speed of the car at the time Perna was struck to have been a rate of 25 to 30 miles, and again at 20 to 25 miles, an hour; and, moreover, the car was then rounding a "slight bend" in the road.

[1] The motion to direct was granted for reasons which induced the district judge to set aside the first verdict and allow a new trial. Indeed, both motions seem to have been tested by the doctrine of the last clear chance. In so considering the case the conduct of decedent and defendant alike was treated as mere negligence. The learned trial judge believed that decedent was guilty of contributory negligence; he understood this to be conceded; but whether such view grew out of an admission of counsel, or was due to interpretation of plaintiff's allegation that when Perna was struck he was working at a point within 10 inches of the west rail and in a place of danger "apparently paying no attention to the approaching car," does not appear. It is to be presumed, however, that plaintiff had some object in amending the declaration so as in terms to change the charge concerning defendant's conduct; and, as we interpret the amendment, the purpose was to convert the charge of mere negligence into one involving an element of intent, or a degree of recklessness equivalent to an intent, to injure Perna and his team, and thus to avoid the effect of the decedent's own negligence. As this court said through Judge Denison, in Fluckey v. Southern Ry. Co., 242 Fed. 468, 470 (155 C. C. A. 244):

"Whether or not the gross and wanton negligence of the defendant will always be a sufficient avoidance of the plaintiff's contributory negligence, it must at least be either really willful, or so highly reckless as to constitute the equivalent of willfulness."

True, the amendment does not expressly charge willful conduct, but it does charge gross and wanton negligence in several respects particularly described. The apparent object of alleging wantonness in the

conduct of the motorman was to charge the defendant with indifference to Perna's rights and with reckless disregard of his dangerous position in the Gratiot road, a public highway. Where the intent of a pleading is clear, as in this instance, we are not disposed to hold a party, seeking a vindication of his claimed rights, to a technical observance of form of allegation involving the choice of a word, such as "willful," "reckless," "wanton," or "gross," which is used with additional and fitting words to describe and characterize particular acts and omissions as constituting more than negligence. Levin v. Memphis & Charleston Railroad Co., 109 Ala. 332, 334, 19 South. 395. There would, for instance, be no room for criticism if the word "willful" had been employed in place of "wanton"; and yet, considering the allegation as to Perna's proximity to the west rail at the time of the injury, in connection with the entire amendment describing the conduct of defendant's motorman, there is scarcely room to doubt that the plaintiff meant to convey the same meaning by the word employed as would have been evident if he had used the word "willful" instead; stating this in another way, when "wanton" is read in connection with the tendency of some of the facts adduced, a degree of reckless disregard of the motorman for the rights of others in the highway is as clearly to be inferred as if an intent in that respect had been in terms alleged. Presumably the object was to avoid the effect of the virtual admission of contributory negligence by alleging acts on the part of defendant which could not be excused even by Perna's negligence; it would thus seem that the purpose was to conform the pleading to plaintiff's view of the evidence.

[2] We think there was error in failing to give effect to the charges introduced into the amended declaration and to the evidence tending to support them. This was not to present a case of mere negligence on the part of a wrongdoer which might be defeated by the contributory negligence, that is, the mere negligence, of the person injured. It is a case of culpability in the wrongdoer, different in kind from ordinary negligence, and creates liability in favor of an injured person whose own ordinary negligence contributes to the injury; the two kinds of culpability thus involved have no relation to each other. In Aiken v. Holyoke Street Railway, 184 Mass. 269, 271, 68 N. E. 238, 239, Chief Justice Knowlton said:

"* * * One who willfully and wantonly, in reckless disregard of the rights of others, by a positive act or careless omission, exposes another to death or grave bodily injury, is liable for the consequences, even if the other was guilty of negligence or other fault in connection with the causes which led to the injury. The difference in rules applicable to the two classes of cases results from the difference in the nature of the conduct of the wrongdoers in the two kinds of cases. In the first case the wrongdoer is guilty of nothing worse than carelessness. In the last he is guilty of a willful intentional wrong."

In McGhee v. Campbell, 101 Fed. 936, 942, 42 C. C. A. 94 (C. C. A. 5), Judge Shelby said in the course of his opinion:

"In cases where the injury is wanton or willful, the doctrine of contributory negligence has no application. * * * Now, if there was evidence before the jury tending to prove the allegation of these counts, and to show that the

acts complained of were committed wantonly and recklessly, then the case could not properly be taken from the jury, even if the evidence, admitted under the pleas to the other counts charging simple negligence, as matter of law had shown contributory negligence. It is clear that one who commits a wrong willfully cannot defend by saying that the injured person was guilty of negligence. * * * The evidence, we think, to say the least, tended to show wanton negligence, or reckless indifference to the probable consequences of the acts complained of, which is construed to be the equivalent of intentional or willful."

Judge Cooley in his work on Torts (2 Cooley, Torts [3d Ed.] p. 1442), thus states the rule:

"Where the conduct of the defendant is wanton and willful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever. * * *"

See Lacey v. Louisville & N. R. Co., 152 Fed. 134, 135, 81 C. C. A. 352 (C. C. A. 5); Strough v. Central R. Co. of New Jersey, 209 Fed. 23, 26, 126 C. C. A. 165 (C. C. A. 3), opinion by Judge Gray; Labarge v. Pere Marquette Co., 134 Mich. 139, 141, 95 N. W. 1073; Wabash R. R. Co. v. Speer, 156 Ill. 244, 251, 40 N. E. 835; Tanner's Executor v. Louisville & Nashville Railroad Co., 60 Ala. 621, 637, 643; Palmer v. Chicago, St. L. & Pittsburgh Railroad Co., 112 Ind. 250, 254, 255, 14 N. E. 70; Harrington v. Los Angeles Ry. Co., 140 Cal. 514, 523, 74 Pac. 15, 63 L. R. A. 238, 98 Am. St. Rep. 85.

[3] In our view of the record we think it sufficient to support a verdict if one were rendered in favor of plaintiff, under instructions appropriately defining the charges made in the amended declaration in respect of the motorman's conduct after he came into full view of the horses and wagon and then of Perna himself. The day was clear and dry; the brakes were in working order; there was no grade either way within 1,000 feet of the point of collision; the motorman saw Perna with his hands in the wagon, paying "no attention to me [the motorman] at all"; there was nothing to indicate any probability of change in position of either Perna or his team; at that time, the motorman states: "I decided I had better stop." There is testimony tending to show that the motorman did not give that prompt and effective warning which the exigency called for, and that the car could have been stopped in time to avoid the injury if the requisite effort had been made. If a situation such as the one here assumed, with its manifest dangers, would not imperatively require stopping the car, what would?

The judgment is reversed, with costs, and direction to award a new trial.