### McCREE v. DAVIS, Director General of Railroads.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1922.)

No. 3590.

1. Carriers ⊂⊃307(1)—Railroad, as private carrier, may contract against liability for negligence.

A railroad company, though a common carrier, when acting outside the performance of its legal duties, may contract as a private carrier and stipulate against liability for injury to persons caused by its negligence.

2. Carriers ⊂⊃307(4), 320(1)—Contract against liability for willful or wanton negligence invalid; willful or wanton negligence as affecting limitation of liability held for jury.

Plaintiff, a circus performer, by her contract with a circus company, released it from any liability for personal injuries which might be sustained by her while being transported in the circus train, and also any railroad company engaged in moving such train, whether due to the fault or negligence of employés of either company. The circus company made a contract with defendant railroad company, by which the latter agreed to furnish trackage, motive power, and crew to move the circus train over a designated route; the contract providing that, while so employed, the members of the crew should be deemed servants of the circus company, and that defendant should not be liable to such company, nor to any person or persons, for injury to any persons or property transported thereunder, caused by defects in tracks, negligence of the train crew, "or arising from any cause whatsoever." Plaintiff, while traveling in the

---

circus train, was injured in a collision between that train and a train of defendant. *Held* that, while the latter contract was effective to release defendant from liability for ordinary negligence, it was invalid, as against public policy, as a release from liability for willful or wanton negligence, and evidence tending to show that those in charge of defendant's train ignored block signals, which gave warning of the train ahead, and crashed at full speed into the circus train, which was standing still, was sufficient to require submission to the jury of the question of willful or wanton negligence.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by Hettie McCree against James C. Davis, Director General of Railroads, as Agent (Michigan Central Railroad Company). Judgment for defendant, and plaintiff brings error. Reversed.

The plaintiff in error, hereinafter called the plaintiff, commenced an action in the United States District Court for the Northern District of Ohio, Western Division, against Walker D. Hines, Director General of Railroads, to recover damages for personal injuries sustained by her on the 22d day of June, 1918, in a collision between two railway trains on the lines of the Michigan Central Railroad Company at Ivanhoe, Ind., which collision, it is averred in the petition, was caused by the wanton and willful negligence of the defendant in moving a train of cars on the tracks of the Michigan Central Railroad Company and approaching the rear of the train on which plaintiff was riding, at the rate of 60 miles an hour, notwithstanding the block signals, with which the defendant's railway system was equipped, were displayed far in the rear of the forward train, in such manner as to show that the track in the rear of plaintiff's train was not clear, and that to proceed along such track would result in a collision. Later the defendant in error, James C. Davis, the present Director General of Railroads, as Agent under section 206 of the Transportation Act of 1920 (41 Stat. 461), was substituted as defendant in this action, and will hereafter be designated as defendant in this statement of facts and opinion.

Hettie McCree is the wife of Reno McCree, both of whom are circus performers. Early in 1918 they entered into a joint contract with the circus company, which contract provides, in substance, that the plaintiff and her husband would release and forever discharge the Hagenbeck-Wallace Shows Company from all claims, damages, liabilities, and causes of action for personal injury or loss of property sustained while in performance of duty, or while traveling in circus trains, or on railway tracks or yards, whether due to the fault or negligence in any degree, if any, of the circus company, its agent or employés, or any transportation company, its officers or servants, in any manner, and also a release and discharge of every railroad company, its officers and servants, engaged in transporting the Hagenbeck-Wallace Circus, from all claims, demands, liabilities, and causes of action for injury to person or property while on its tracks or yards, or while being transported by such company. The contract further provided that the plaintiff and her husband would protect, indemnify, and save harmless the Hagenbeck-Wallace Shows Company with respect to any money it might be compelled to pay or surrender, or to which it may be subject, in consequence of any accident or injury or death of the plaintiff or her husband while occupying circus cars, or while upon the track of any railroad company, and further authorized the Hagenbeck-Wallace Shows Company to assign this contract to any such railroad to be used in its defense.

The Hagenbeck-Wallace Shows Company on the 28th day of May, 1918, entered into a contract with the Michigan Central Railroad Company and the Indiana Harbor Belt Railroad Company, each for itself and not for the other, by the terms of which contract these railway companies agreed to furnish tracks, siding, motive power, and crews necessary for the transportation of the Hagenbeck-Wallace Shows Company circus trains over their respective lines from Toledo, Ohio, to Franklin Park, Ill., via a number of stations in

Michigan and Indiana, and to deliver at Franklin Park, Ill., the loaded equipment and circus cars and train to the Chicago, Milwaukee & St. Paul Railway. The fifth paragraph of this contract reads in part as follows:

"Fifth. The liability of the respective parties hereto as to all persons and property transported or to be transported in pursuance of this agreement shall be governed by the provisions thereof, and in that behalf it is agreed that this contract is not made with the said railroad company as a carrier, either common or special, of the said persons or property or any thereof (the compensation to be paid by said second party being wholly inadequate consideration for any such undertaking), but as a hirer to the party of the second part of the motive power and of men to operate the same, and of the right to use the road and tracks of the said railroad company, to the extent necessary in the premises, and that the conductors, engineers, trainmen, and other employés furnished by the said railroad company hereunder shall, as between the parties hereto, while engaged in such employment, be deemed to be the servants of the party of the second part, and that the said railroad company shall not be liable to the said party of the second part, nor to any person or persons, for any injury or damage which may happen to said persons, cars, or property to be or which will be transported hereunder, which may be caused by defect in said railroad or tracks or unsuitableness thereof for such transportation, or by the negligence of said conductors, engineers, trainmen, or other servants, or any or either of them, or arising from any cause whatsoever."

This contract was made pursuant to Freight Tariff I. C. C. 5105, filed with the Interstate Commerce Commission May 29, 1918.

About 11 o'clock p. m., June 21, 1918, and after the night performance in Michigan City, Ind., the plaintiff and her husband retired to their sleeping berth in the car provided for them by the circus company. This car, with three or four other sleeping cars, was attached to the rear part of the circus train, consisting of about 25 cars in all, which train was to be transported that night, to Hammond, Ind. Neither the plaintiff nor her husband paid any passenger fare, but accepted the transportation provided for them by the circus company in accordance with their contract with that company.

There is evidence in this record tending to prove that, as this section of the circus train approached Ivanhoe tower about 3:45 a. m. on the 22d of June, it was compelled, on account of a hot box, to stop about 300 feet east of the E. J. & E. tracks and east of Ivanhoe tower, where there is a spur track leading from the Michigan Central to the Gary & Western tracks; that the circus train moved on the crossover and stopped with about 10 or 11 cars remaining on the main track of the Michigan Central and about 14 or 15 cars on the crossover track to the Gary & Western; that east of Ivanhoe tower the tracks of the Gary & Western Railroad parallel the tracks of the Michigan Central for a distance of 4 or 5 miles. There is also evidence tending to prove that the Michigan Central was then equipped with automatic block signals; that the Ivanhoe tower was equipped with such a signal, and also with other arms to indicate whether the crossover track was open or not; that directly east of the Ivanhoe tower there are a series of block signals; that, whenever a train is in one block, the signals in the first block, immediately to the rear, will show red, and the signals in the second block to the rear will show yellow; that, if for any reason the means of controlling these signals fail to operate, then all signals in all of these blocks will show red.

There is also evidence tending to prove that the circus train was followed by another train consisting of some 20 empty Pullman coaches, to be used for the movement of troops, which train is usually referred to in the evidence and briefs as the troop train; that, when the circus train stopped, the rear brakeman procured a couple of fusees, got off the train, and started to walk back eastward along the track. After he had walked some 200 or 300 feet east he heard the exhaust of the troop train, but was unable to tell from the sound whether the troop train was on the Michigan Central tracks or the tracks of the Gary & Western; that he could not see the train, because it was around a sharp curve three-quarters of a mile east of the Ivanhoe crossing; that he continued walking to the rear, without increasing his speed until he

saw the headlight coming around the curve; that he knew the Michigan Central was equipped with a block system, and he also knew that there was a block signal just around the curve—that is, just west of it; that when he saw the train was upon the Michigan Central track he realized the engineer of the approaching train was not obeying this block signal; that he then started to run eastward down the track, and as the troop train kept coming onward he lit one of the fusees he had taken with him and swung it a few times across the track; that he observed no indication that the train was checking its speed, and when it was almost upon him he stepped off of the track to his left, and threw the lighted fusee at the window of the engine cab. This availed nothing, and the train shortly thereafter crashed into the rear end of the circus train.

At the conclusion of the plaintiff's evidence the defendant moved for a directed verdict, which motion was sustained by the trial court, and the plaintiff's exceptions noted.

Harold W. Fraser and Percy R. Taylor, both of Toledo, Ohio (Marshall & Fraser, of Toledo, Ohio, on the brief), for plaintiff in error.

J. Walter Dohany, of Detroit, Mich. (Potter & Carroll, of Toledo, Ohio, and Frank E. Robson, of Detroit, Mich., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). The trial court, as appears from its opinion, copied into the record in this case, sustained the motion of the defendant for a directed verdict upon the theory that the contract between the plaintiff and her employer, the circus company, and the contract between the circus company and the railroad company, were valid contracts, barring plaintiff from recovery of any damages in this action. It is unnecessary to consider these contracts in detail. If either is valid, it would be a bar to plaintiff's recovery of damages for injuries which she may have sustained by reason of the ordinary negligence of the railway's employés.

[1] While the validity of the contract between herself and the circus company might well be challenged as an Ohio contract (section 6243, Gen. Code Ohio; Railway Co. v. Kinney, 95 Ohio St. 64, 115 N. E. 505, L. R. A. 1917D, 641, Ann. Cas. 1918B, 286), regardless of the attempt to escape the settled public policy of Ohio by providing that the laws of the District of Columbia, or some other state or country, having no connection whatever either with the making or performance of the contract, should control (Insurance Co. v. Clements, 140 U. S. 226, 232, 11 Sup. Ct. 822, 35 L. Ed. 497; Insurance Co. v. Cohen, 179 U. S. 262, 21 Sup. Ct. 106, 45 L. Ed. 181, quoted and approved in Insurance Co. v. Hill, 193 U. S. 551, 554, 24 Sup. Ct. 538, 48 L. Ed. 788), or as so offending against the public of Ohio that it would not be enforced in the courts of Ohio (Bank v. Earle, 13 Pet. 519, 10 L. Ed. 274; Grosman v. Union Trust Co., 228 Fed. 610, 143 C. C. A. 132, Ann. Cas. 1917B, 613), or by a federal court in Ohio, for the reason that the law of Ohio is, in a case of this character, equally the lex fori as if the case were pending in an Ohio court (Pritchard v. Norton, 106 U. S. 129, 1 Sup. Ct. 102, 27 L. Ed. 104; Trust Co. v. Grosman, 245 U. S. 412, 418, 38 Sup. Ct. 147, 62 L. Ed. 368; Grosman v. Union Trust Co., 228 Fed. 610, 143 C. C. A. 132, Ann. Cas. 1917A, 613; Keystone Wood

Co. v. Boom Co., 240 Fed. 296, 153 C. C. A. 222), nevertheless the decision of either of these questions would avail nothing, for the reason that the authorities are unanimous in holding that the railroad company, although a common carrier, when acting outside the performance of its legal duties, may contract as a private carrier and stipulate from liability for injury to persons or property caused by its negligence, and that the employés of the circus company, accepting transportation under such a contract, are bound by its terms (Railroad Co. v. Maucher, 248 U. S. 359, 39 Sup. Ct. 108, 63 L. Ed. 294; Clough v. Grand Trunk Ry. Co., 155 Fed. 81, 85 C. C. A. 1, 11 L. R. A. [N. S.] 446; Wilson v. Railroad Co. [C. C.] 129 Fed. 774; Railroad Co. v. Wallace, 66 Fed. 506, 14 C. C. A. 257, 30 L. R. A. 161; Railway Co. v. Henry, 170 Ind. 94, 103, 105, 83 N. E. 710).

[2] There is, however, a serious controversy between counsel as to the correct construction of the fifth paragraph of this contract between the railroad company and the circus company. It is contended on the part of the defendant that the words "or arising from any cause whatsoever" comprehend and include the negligence of any of the railway company's servants and employés. It is contended on the part of counsel for plaintiff in error that this construction is entirely too broad, and that this provision should be construed in accordance with the doctrine of ejusdem generis. It is undoubtedly a canon of construction that all contracts limiting liability must be strictly construed against the carrier. Nevertheless the words used in a contract must be given their plain, usual, and ordinary meaning, and where that meaning is clear and unambiguous it cannot be controlled or changed by any rules of interpretation that might be useful and applicable to the interpretation of ambiguous language or uncertain or indefinite terms in a contract. This language is plain and comprehensive. In so many words it provides that the railway company shall not be liable to the circus company, or to any person or persons, for any injury or damage which may happen to said person, cars, or property "arising from any cause whatsoever." It is true that there are a number of specific causes of accident or injury mentioned, such as defects in railroad or tracks, or unsuitableness of tracks for the purpose, or the negligence of conductors, engineers, trainmen or other servants or any or either of them.

It would seem from other parts of this paragraph that the employés specifically mentioned, were the conductors, engineers, trainmen, or other employés furnished by the railway company to the circus company for the moving of the circus train and engaged in the handling of the circus train, nevertheless the application of the doctrine of ejusdem generis to this comprehensive provision "or arising from any cause whatsoever" would necessarily defeat the intent, purpose, and effect of this provision. This court is therefore of the opinion that paragraph 5 of this contract must be construed as a release of this railway company from all damages to persons and property of the employés of this circus company caused by the ordinary negligence of any of the employés of the railway company, and that, the plaintiff in error having accepted transportation under this contract, she is bound by its terms. The railroad company, however, could not contract, either with the

circus company, or the employés of that company, for a release from any willful and wanton negligence on its part; therefore this comprehensive provision, "or arising from any cause whatsoever," cannot be held to include wanton and willful negligence on the part of the railroad company or its employés, and, if so construed, it would be void as against public policy.

The second amended petition charges that the injury to the plaintiff was occasioned by the wanton and willful negligence, of the defendant's agent, servants, and employés in charge of and operating the troop train, which collided with the rear end of the circus train, and if there is any evidence tending to support this allegation of the plaintiff's petition, then she would be entitled to have that question submitted to a jury, regardless of the contracts, and regardless of the fact that she did not sustain the relation of passenger to the railway company. It is insisted, however, that there is no such thing as willful negligence, for the reason that the term implies intentional injuries, and that, in the case of intentional injury, negligence is of no importance. There is, however, a substantial difference between the terms "willful negligence" and "intentional injury," as these terms are commonly understood. A person may be guilty of willful negligence, without having formed the actual intent to injure any person, much less the particular individual who happens to be injured by the result of that negligence.

It is also said that the terms "wanton" and "willful" are merely vituperative epithets, that add nothing whatever to the charge of negligence. The Supreme Court of the United States does not seem to entertain this view of wanton and willful negligence. On the contrary, in the case of Railroad Co. v. Mohney, 252 U. S. 152, 157, 40 Sup. Ct. 287, 289 (64 L. Ed. 502, 9 A. L. R. 496), that court said:

"But the Court of Appeals affirmed the judgment on two grounds, one of which was that all of the judges were 'clearly of the opinion that the negligence in the case, under the evidence, was willful and wanton.' This court does not weigh the evidence in such cases as we have here, but it has been looked into sufficiently to satisfy us that the argument that there is no evidence whatever in the record to support such a finding cannot be sustained. A carrier by rail is liable to a trespasser or to a mere licensee willfully or wantonly injured by its servants in charge of its train (Commentaries on the Law of Negligence, Thompson, §§ 3307, 3308 and 3309, and the same sections in White's Supplement thereto), and a sound public policy forbids that a less onerous rule should be applied to a passenger injured by like negligence when lawfully upon one of its trains. This much of protection was due the plaintiff as a human being who had intrusted his safety to defendant's keeping. Southern Pacific Co. v. Schuyler, 227 U. S. 601, 603; Chicago, Rock Island & Pacific Ry. Co. v. Maucher, 248 U. S. 359, 363."

It is said, however, that the doctrine announced by the Supreme Court in the Mohney Case applies to passengers only, because the court expressly used the word "passenger" in connection with willful and wanton negligence. The court, however, in the language above stated, expressly applied this rule of liability for willful and wanton injury to trespassers or mere licensees. In Railway Co. v. Maucher, supra, the Supreme Court said:

"Furthermore, plaintiff was not even a passenger on the railway. His claim rests, not upon a contract of carriage, but upon the general right of a human being not to be injured by the negligence of another."

To the same effect is the doctrine announced in Railway Co. v. Schuyler, 227 U. S. 601, 613, 33 Sup. Ct. 277, 57 L. Ed. 662, 43 L. R. A. (N. S.) 901.

This plaintiff was not a trespasser or mere licensee. Even if she did not sustain the relation of a passenger to the railroad company, she was being transported, either by the railroad company, itself, or by the circus company using the tracks, motive power, and train crew furnished to the circus company by the railroad company, not gratuitously, but at a price satisfactory to the railroad company, and paid to the railroad company by the circus company. Therefore she was entitled to ride upon this train, and she was rightfully upon the tracks of the defendant company. Under the authority of the cases above cited, the plaintiff as a human being was entitled, at the very least, to be protected from the willful and wanton negligence of the agents and servants of the railroad company engaged in the operation and movement of other trains upon its tracks. It was said by this court in the case of Fluckey et al. v. Southern Ry. Co., 242 Fed. 468, 155 C. C. A. 244, that:

"Gross and wanton negligence of a railway company, to avoid the contributory negligence of a person struck by a railway motor car, must be really willful or so highly reckless as to constitute the equivalent of willfulness."

In Perna v. Rapids Ry. Co., 250 Fed. 728, 731, 163 C. C. A. 60, 63, this court said:

"We think there was error in failing to give effect to the charges introduced into the amended declaration and to the evidence tending to support them. This was not to present a case of mere negligence on the part of a wrongdoer, which might be defeated by the contributory negligence—that is, the mere negligence—of the person injured. It is a case of culpability in the wrongdoer, different in kind from ordinary negligence, and creates liability in favor of an injured person whose own ordinary negligence contributes to the injury; the two kinds of culpability thus involved have no relation to each other"—citing Aiken v. Holyoke Street Railway, 184 Mass. 269, 271, 68 N. E. 238; McGhee v. Campbell, 101 Fed. 936, 942, 42 C. C. A. 94, 100.

The court also quotes with approval from the opinion of McGhee v. Campbell, supra, the following:

"In cases where the injury is wanton or willful, the doctrine of contributory negligence has no application."

While the doctrine announced in these cases is not applicable to the facts in the case at bar, nevertheless they are pertinent for the purpose of showing that this court has not heretofore considered the terms "gross," "wanton," and "willful" as merely vituperative adjectives.

It is a settled rule of law that a contract purporting to release the defendants from all liability for negligence would be ineffective as a defense, where the injury to the plaintiff results from such willful and wanton negligence on the part of the servants of the defendant. Railway Co. v. Mohney, supra. The wanton and willful negligence charged in the Mohney Case was that the second section of the train ran past two block signals indicating danger ahead, and collided with the rear car of the first section in which Mohney was riding, causing him serious injury. Therefore the question here presented as to the

facts constituting wanton and willful negligence is identical with the question in the Mohney Case, and, as we have heretofore noted in this opinion, the Supreme Court in the Mohney Case was merely applying the rule of liability to a trespasser or to a mere licensee for willful or wanton negligence to one riding upon a pass, regardless of whether that pass was or was not gratuitous.

The plaintiff in this case has specifically stated the facts upon which she predicates the averment that the negligence of the defendant's servants was willful and wanton. There is evidence in this record tending to prove these averments of her petition charging willful and wanton negligence on the part of the employés of the railway company other than those employed in the movement of the circus train, and who under no construction of this contract between the circus company and the railway company could be held to be the servants of the circus company. Therefore it was a question for the jury to determine whether the plaintiff had sustained, by a preponderance of the evidence, the truth of the allegations of her petition in this respect, and, if so, whether the failure of the railway employés in charge of the troop train to observe and obey the block signals and the signals given by the rear brakeman of the circus train evidenced such reckless disregard for human life and human safety as to constitute willful and wanton negligence.

For the reason above stated, the trial court erred to the prejudice of the plaintiff in error in sustaining the motion of the defendant for a directed verdict. The judgment of the District Court is reversed, and the cause remanded for a new trial in accordance with this opinion.